817 A.2d 212

**Edwin Gibbons MOORE, III**

v.

**Suzanne Gibbs JACOBSEN.**

No. 55, Sept. Term, 2002.

Court of Appeals of Maryland.

Feb. 21, 2003.

Jon W. Sargent (Greenberg Felsen & Sargent, LLC, on brief), Rockville, for petitioner.

Bruce M. Bender (Samuel D. Williamowsky of Van Grack, Axelson & Williamowsky, P.C., on brief), Rockville, for respondent.

Argued Before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

RAKER, J.

This case requires us to interpret Maryland Code (1984, 1999 Repl.Vol.) § 11–108 of the Family Law Article,[1] which provides that unless the parties agree otherwise, alimony terminates on the death of either party, on the marriage of the recipient or if the court finds that termination is necessary to

---

1. Unless otherwise noted, all subsequent statutory references are to Maryland Code (1984, 1999 Repl.Vol.) of the Family Law Article.

avoid a harsh and inequitable result. The issue we must decide is whether the provision in the parties' separation agreement obligating the husband to pay alimony to the wife terminated upon the wife's remarriage, despite the fact that the agreement provided that alimony was "non-modifiable" by a court and payable for a term of seven years, but did not make any express reference to § 11–108 or the effect of remarriage of the wife upon the right to receive alimony. We shall hold that, unless an agreement states explicitly that alimony survives a party's remarriage, alimony terminates on the marriage of the recipient spouse.

On March 13, 2000, the Circuit Court for Montgomery County granted Suzanne Gibbs Jacobsen, respondent, an absolute divorce from Edwin Gibbons Moore, III, petitioner. The parties entered into a voluntary separation and property settlement agreement which, *inter alia,* addressed property division, child support and alimony. The alimony provision of the agreement provided as follows:

"8.0 *ALIMONY*

8.1 The husband shall pay to the wife non-modifiable alimony in the amount of $833.33 per month commencing on April 1, 2000 and payable on the 1st day of each month thereafter for eighty-four consecutive months or until the payment due on April 1, 2007.

"The parties expressly covenant and agree pursuant to Section 8–101 through Section 8–103 of the Family Law Article Annotated Code of Maryland, that no court shall have the power to modify this agreement with respect to alimony, support or maintenance of either spouse except as provided herein."

Neither the divorce decree nor the settlement agreement incorporated into the decree contained specific language concerning the effect of remarriage upon petitioner's alimony obligation.[2]

---

**2.** We note that the separation agreement provision addressing child support, 7.0, provided that petitioner's obligation to pay child support

Respondent remarried on September 2, 2000, and immediately thereafter petitioner ceased paying alimony. As a result, respondent sought a money judgment against petitioner equal to the accumulated alimony arrears and counsel fees. The Circuit Court rejected petitioner's argument that respondent's remarriage automatically relieved him of the obligation to pay alimony and entered a judgment in favor of respondent in the amount of $8833.33, plus $750.00 in counsel fees.

Petitioner noted a timely appeal to the Court of Special Appeals, which affirmed the judgment of the trial court as to termination of alimony. This Court granted Moore's petition for writ of certiorari to consider whether, under the terms of the parties' agreement and § 11–108, his obligation to pay alimony terminated when respondent remarried. *Moore v. Jacobsen*, 370 Md. 268, 805 A.2d 265 (2002).

Petitioner first argues that the clear and unambiguous language of § 11–108 requires that alimony terminate on the recipient's remarriage unless the parties agree otherwise and, as a result, his obligation to pay alimony terminated because the parties' separation agreement was silent as to the issue of remarriage. He contends that § 11–108 requires an express agreement to continue alimony after remarriage. Second, petitioner asserts that termination is not a modification under § 8–103; therefore, the nonmodifiability clause is irrelevant.

Respondent argues in response that petitioner's obligation to pay alimony did not terminate on her remarriage because the parties agreed unambiguously that alimony was nonmodifiable for a seven-year period. She contends that the definite termination date of the alimony and the nonmodifiability provision in the agreement indicate that the parties agreed "otherwise" as envisioned by § 11–108. Because the separation agreement listed no exceptions to the nonmodifiability clause,

---

"shall cease and terminate upon the first to occur of any of the following events with respect to each child: 1. The death of the child or husband, 2. The marriage of the child, 3. The child's becoming self-supporting, or 4. The child's arrival at the age of eighteen years."

the clear intent of the parties was that alimony would continue regardless of any subsequent events, and this Court must give effect to that intent. Furthermore, she argues that § 11–108, Termination of alimony, and § 8–103, Modification of deed, agreement, or settlement, must be read together and that termination is a form of modification under the statutory scheme. As such, the nonmodifiability clause prohibits termination of alimony.

We must determine whether respondent's right to alimony terminated upon her remarriage or whether the parties' agreement satisfied the "agree[d] otherwise" language of § 11–108. The Court of Special Appeals held that the terms of the alimony provision in the separation agreement, indicating that the alimony provision was nonmodifiable by any court and setting a finite endpoint for alimony payments, represented an agreement "otherwise."

■ We turn to the question raised by the parties. If alimony payments are to continue after remarriage of the recipient spouse, must the separation agreement include specific language indicating that to be the intent of the parties? We hold that the agreement must contain express and clear language evidencing the parties' intent that alimony will continue after remarriage of the recipient spouse; otherwise, pursuant to the language of the statute, remarriage terminates the obligation.

Section 11–108 states as follows:

> "Unless the parties agree otherwise, alimony terminates: (1) on the death of either party; (2) on the marriage of the recipient; or (3) if the court finds that termination is necessary to avoid a harsh and inequitable result."

Section 11–108 requires that alimony terminate on the remarriage of the recipient *unless the parties agree otherwise.* The statute does not state whether the agreement must be in writing or whether the agreement must be provided expressly in the agreement or in the divorce decree. Nonetheless, we believe that unless the parties agree explicitly, in writing, the

statutory presumption that alimony terminates upon remarriage controls.

Under Maryland law, alimony historically terminated on the remarriage of the recipient spouse. In *Knabe v. Knabe,* this Court, laying out "the law of this State," noted that "alimony ceases unconditionally upon the wife's remarriage." 176 Md. 606, 613, 6 A.2d 366, 369 (1939) (citing *Hood v. Hood,* 138 Md. 355, 365, 113 A. 895, 899 (1921), and *Emerson v. Emerson,* 120 Md. 584, 595–96, 87 A. 1033, 1037–38 (1913)); *see also Marshall v. Marshall,* 164 Md. 107, 113, 163 A. 874, 876 (1933); *Spear v. Spear,* 158 Md. 672, 674–75, 149 A. 468, 469 (1930). Maryland law also recognizes the right of parties to contract in the area of domestic relations and recognizes the validity of settlement agreements. *See* Maryland Code (1984, 1999 Repl. Vol.) § 8–101 of the Family Law Article.[3] Parties may draft separation agreements to meet particular needs. *See Langston v. Langston,* 366 Md. 490, 503, 784 A.2d 1086, 1093 (2001). The language of § 11–108 embodies these policies by mandating that alimony terminates on remarriage of the recipient spouse unless the parties agree that it does not.

The public policy set forth in § 11–108 clearly states that alimony does not survive the remarriage of the recipient. To create an exception to that policy, an agreement must be equally clear. We think a bright-line rule requiring an express provision providing that support shall not terminate upon remarriage fosters certainty, resolves ambiguity and reduces litigation. "To permit [the statute's] mandate to be overcome by implication would introduce ambiguity, encourage litigation and, thereby, undermine the statute's purpose." *Radford v. Radford,* 16 Va.App. 812, 433 S.E.2d 35, 36 (Va.Ct. App.1993).

If the parties had intended that alimony would continue after remarriage, they should have, and could have, included

---

3. Maryland Code (1984, 1999 Repl.Vol.) § 8–101(b) of the Family Law Article provides as follows: "A husband and wife may make a valid and enforceable settlement of alimony, support, property rights, or personal rights."

an express requirement in the agreement. They included an express requirement in the agreement as to the termination of child support. *See supra* note 2. We do not construe the language contained in 8.0 of the agreement before us to evidence an intent of the parties that petitioner was required to continue to pay alimony to respondent for seven years, even if she remarries.

We reject respondent's argument that the separation agreement satisfied the requirement of § 11–108 in that the agreement provided that "no court shall have the power to modify this agreement with respect to alimony, support or maintenance of either spouse except as provided herein." Section 8–103(b), addressing the power of a court to modify a settlement agreement with respect to spousal support, reads as follows:

> "The court may modify any provision of a deed, agreement, or settlement with respect to spousal support executed on or after January 1, 1976, regardless of how the provision is stated, unless there is a provision that specifically states that the provisions with respect to spousal support are not subject to any court modification."

It is obvious that the parties included the nonmodification provision to fall within § 8–103 and to preclude judicial modification. Termination is not synonymous with modification. *Black's Law Dictionary* 1004, 1471 (6th ed.1990) (defining modify as "[t]o alter; to change in incidental or subordinate features" and terminate as "[t]o put an end to; to make to cease; to end"). Termination is not modification and therefore is not prohibited by the nonmodifiability clause in the separation agreement. Termination and modification of alimony are, in fact, treated separately by and are wholly distinct under Maryland law. Section 11–108 governs alimony termination; § 11–107 governs alimony modification. In contrast to modification, which requires court action, termination occurs by operation of law and thus does not require court action. The nonmodifiability clause of the parties' agreement does not operate to prohibit termination of alimony upon remarriage and is not a substitute for use of the word "remarriage."

Our conclusion is consistent with the majority view adopted by our sister states that have considered this issue. Many of those states have adopted statutes similar in language to that of § 11–108, providing that remarriage terminates an alimony recipient's right to receive alimony unless there is an agreement otherwise. *See, e.g.,* Cal. Fam.Code § 4337 (West 1994 & Supp.2003); Del.Code Ann. tit. 13, § 1519 (1999); Ga.Code Ann. § 19–6–5(b) (1999 & Supp.2002); Minn.Stat. § 518.64(3) (1990 & Supp.2003); Mo. Ann. Stat. § 452.370.3 (West 1997 & Supp.2003); Va.Code Ann. § 20–109(D) (Michie 2000 & Supp. 2002); Wash. Rev.Code § 26.09.170(2) (2000). Courts interpreting these statutes have recognized the importance of requiring clear and express language to overcome a statutory presumption that alimony terminates on the recipient's remarriage. *See, e.g., In re Marriage of Glasser,* 181 Cal.App.3d 149, 226 Cal.Rptr. 229, 230–31 (Cal.Ct.App.1986); *Crosby v. Tomlinson,* 263 Ga. 522, 436 S.E.2d 8, 9 (Ga.1993); *In re Marriage of Telma,* 474 N.W.2d 322, 323 (Minn.1991); *In re Marriage of Gunderson,* 408 N.W.2d 852, 853 (Minn.1987); *Glenn v. Snider,* 852 S.W.2d 841, 843 (Mo.1993); *MacNelly v. MacNelly,* 17 Va.App. 427, 437 S.E.2d 582, 584 (Va.Ct.App. 1993); *In re Marriage of Williams,* 115 Wash.2d 202, 796 P.2d 421, 422, 425 (Wash.1990).

In *In re Marriage of Williams,* the Washington Supreme Court held that spousal maintenance terminates on remarriage of the recipient spouse "absent *specific* language to the contrary." 796 P.2d at 422. The parties agreed pursuant to a written settlement agreement that the husband would pay maintenance to the wife for four years or until she received her college degree and that the maintenance provisions were nonmodifiable by a court. The agreement was silent as to remarriage. The former wife remarried shortly thereafter, and the former husband moved to terminate his obligation to pay maintenance. The controlling statute, similar in language to the Maryland statute, read as follows: "Unless otherwise agreed in writing or expressly provided in the decree the obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving

maintenance." *Id.* at 423 (Wash. Rev.Code § 26.09.170(2)). Noting the importance of specific language to overcome the presumptive termination of alimony by operation of law, the court stated:

> "This decree declares that maintenance will be paid until [the wife] completes her bachelor's degree or until 4 years pass, whichever comes first. This speaks no more specifically to the parties' intentions as to the effect of remarriage than an agreement to pay permanent alimony or alimony for a fixed period not linked to the educational needs of a spouse. Accordingly, we hold that the dissolution decree lacked the specific language necessary to overcome the statutory presumption. In the hopes of discouraging dubious interpretation of questionable decretal language, we hold further that the decree must specifically mention remarriage in order to overcome the presumption."

*Id.* at 425.

Similarly, in *Glenn v. Snider,* 852 S.W.2d 841 (Mo.1993), the Missouri Supreme Court required that an agreement between the parties must refer specifically to remarriage to avoid the termination of alimony. The court considered whether a former spouse remains obligated to pay maintenance of a fixed duration when the recipient spouse remarries and both the divorce decree and the separation agreement are silent on the effect of remarriage. Section 452.370.2 of the Missouri Revised Statutes provided as follows: "Unless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future statutory maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance." The court, reiterating an earlier holding, noted that an agreement that is silent on the issue of remarriage is not ambiguous. The court found that the Missouri statute creates a presumption that maintenance terminates upon remarriage of the recipient spouse and that the presumption may be rebutted only if otherwise agreed in writing or expressly provided in the decree. *Id.* at 843 (citing *Cates v. Cates,* 819 S.W.2d 731, 736–37 (Mo.1991)).

The California Court of Appeal, in *In re Marriage of Glasser*, 181 Cal.App.3d 149, 226 Cal.Rptr. 229, 230–31 (Cal.Ct. App.1986), considered a situation similar to the case *sub judice*. Pursuant to a settlement agreement, the husband agreed that he would pay spousal support to his former wife for a period of three years and that spousal support was to be "non-modifiable for any reason whatsoever." *Id.* at 230. The wife remarried before the passage of three years. The court agreed with the husband that support terminated upon her remarriage, emphasizing that the definite termination date of the support and the nonmodifiability clause did not constitute an agreement that support survived remarriage. The court reasoned as follows:

"[L]anguage showing intent not to modify the agreement does not establish that the parties intended that Wife would continue to be supported after she remarried. A husband's obligation to his former wife ends by operation of law when she marries another. If the parties intend that support is to be 'nonterminable for any reason whatsoever,' they must say so in their agreement. No particular words are required. On the other hand, silence will not do. Language stating that the support is not modifiable also will not do."

*Id.* at 230–31 (citations omitted); *see also In re Marriage of Thornton*, 95 Cal.App.4th 251, 115 Cal.Rptr.2d 380, 383 (Cal. Ct.App.2002) (noting that "[a]n agreement making support 'non-modifiable' is not the same as an agreement making support non-*terminable* upon the statutorily specified events"). The court held that "[i]f the parties do not agree otherwise in writing, the support terminates by operation of law upon the occurrence of either of the two contingencies in the statute, i.e., death of either party or remarriage of the supported party." *Id.* at 252, 115 Cal.Rptr.2d 380.

Respected commentators in the field of domestic relations appear to assume that explicit language about remarriage is required, noting that the "general rule" is that the obligation to pay alimony terminates on the recipient's marriage. 1 B. Frank et al., *Alimony, Child Support, Counsel Fees* § 9.02[4], at 23 (1992); *see also* 1 A. Lindey & L. Parley, *Lindey and*

*Parley on Separation Agreements and Antenuptial Contracts* § 22.66[3], at 116 (2d ed.2002) (noting that "the general rule is that remarriage of the payee spouse will terminate the payor's alimony obligation"). Accordingly, experts remind practitioners that "agreements to continue alimony after the remarriage of the recipient must indicate such intent. It is not enough that the language of the agreement shows an intent not to modify." Section of Family Law, Am. Bar Ass'n, *Alimony: New Strategies for Pursuit and Defense* 110 (1988) (footnotes omitted); *see also* 1 S. Schlissel et al., *Separation Agreements and Marital Contracts* § 6C.19 (2d ed.1997) (commenting that "[b]ecause of the common perception that alimony automatically terminates upon a remarriage of the recipient, if alimony is to continue after such a remarriage, you should spell it out clearly").

Section 11–108, in pertinent part, requires the parties to agree about *remarriage,* not about alimony duration or modification. An agreement must mention marriage expressly; other agreements, such as those in this case addressing nonmodification, will not suffice. The parties here did not agree so as to avoid the operation of § 11–108; therefore, alimony terminated upon respondent's remarriage.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AND REMAND THE CASE TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.*

BELL, C.J. and BATTAGLIA, J. dissent.

BATTAGLIA, J., dissenting.

I respectfully dissent for the well articulated reasons stated by the Court of Special Appeals in *Moore v. Moore,* 144 Md.App. 288, 797 A.2d 839 (2002). Particularly, I am troubled that the majority is willing to stretch the ordinary meanings of

the terms "modification" and "termination" to support its conclusion. I refuse to accept the proposition that an agreement expressly prohibiting modification of alimony nevertheless allows for the termination of alimony—the most radical type of modification imaginable.

Chief Judge BELL authorizes me to state that he joins in this dissent.