998 A.2d 898

Joseph F. ANDRULONIS

v.

Mary I. ANDRULONIS.

No. 2431 Sept.Term, 2008.

Court of Special Appeals of Maryland.

May 5, 2010.

Reconsideration Denied July 9, 2010.

602

604

William E. Seekford, Perry Hall, MD, for Appellant.

Judith L. Walker, Takoma Park, MD, for Appellee.

Panel: HOLLANDER, ZARNOCH and WRIGHT, JJ.

WRIGHT, Judge.

On December 4, 1995, the Circuit Court for Baltimore County granted appellee, Mary I. Andrulonis ("Wife"), an absolute divorce from appellant, Joseph F. Andrulonis ("Husband"). As part of the judgment, Husband was ordered to

pay alimony in accordance with the parties' separation agreement, granting "Wife permanent alimony in the amount of four thousand dollars ($4,000.00) per month ... until [Husband] terminates his employment and begins to receive termination, retirement or disability benefits...." In addition, "[e]ach party waive[d] his or her right to have any court assume jurisdiction for the purpose of modifying this provision."

On July 27, 1998, Husband filed a complaint ("1998 Complaint") for modification and/or termination of spousal support provisions, pursuant to Wife's remarriage. Wife filed a motion to dismiss Husband's 1998 Complaint, which the court granted on December 3, 1998. Husband subsequently appealed to this Court, but was unsuccessful, as we held that the circuit court correctly "concluded that the alimony provision contained in the parties' divorce decree is not modifiable." *Andrulonis v. (Andrulonis) Reilly* (*"Andrulonis I"*), No. 5526, Sept. Term, 1998, slip op. at 3, 128 Md.App. 703, 128 Md.App. 711 (Ct. of Spec.App. Sept. 20, 1999). Thereafter, on July 30, 1999, the circuit court issued an immediate earnings withholding order directing Husband to pay alimony by way of a wage lien.

On May 6, 2008, Husband filed another complaint ("2008 Complaint"), wherein he asked the court to strike and/or withdraw its immediate earnings withholding order and sought judgment against Wife "for three (3) years of wrongful and unlawful taking of monies thereunder." Once again, Wife filed a motion to dismiss. A hearing was held on November 14, 2008, after which the court granted Wife's motion. This appeal followed.

The single issue before this Court is whether the circuit court erred in dismissing Husband's 2008 Complaint.[1] For the reasons set forth below, we reverse the trial court's

---

1. Husband originally presented seven questions in his brief. We have consolidated those questions into a single issue, as each of them merely presented a separate argument with regard to the circuit court's grant of Wife's motion to dismiss.

judgment and remand for proceedings consistent with this opinion.

## Facts and Procedural History

The parties were married on July 18, 1959, and separated thirty-two years later, on or about November 2, 1991. On August 23, 1995, they executed a separation and property settlement agreement ("Agreement"), wherein Husband agreed, under Paragraph II, to:

pay Wife permanent alimony in the amount of four thousand dollars ($4,000.00) per month, to commence upon the date of the signing of this Agreement. Husband agrees to pay Wife alimony until he terminates his employment and begins to receive termination, retirement or disability benefits, at which time Wife shall receive a fifty percent (50%) share of the total amount of Husband's Termination Payments, Extended Termination Payments, Temporary Disability Payments, or other type of post-employment wages, income, benefits or payments. . . .

\* \* \*

[ ] Each party waives his or her right to have any court assume jurisdiction for the purpose of modifying this provision of this Agreement.

In addition, Paragraph VIII of the Agreement stated that, "[i]n express exchange for the consideration provided Wife in §§ II and III.A of this Agreement, Wife waives any and all right, title and interest in 'The 702 Lounge.' " Paragraph XII provided that "[t]he provisions concerning alimony and health insurance coverage shall be merged in any decree of absolute divorce obtained by either party."

On December 4, 1995, the circuit court issued a judgment of absolute divorce, which "ORDERED that Joseph F. Andrulonis pay alimony unto Mary I. Andrulonis in accordance with [the aforementioned] Paragraph II of the Agreement between the parties, not subject to Court modification." No exceptions were filed and neither party appealed the final divorce judg-

ment. Furthermore, no modifications were made to the parties' Agreement.

On May 9, 1998, Wife remarried. On July 27, 1998, Husband filed the 1998 Complaint, seeking "modification and/or termination of spousal support provisions in [the] divorce decree." According to Husband, the divorce court "erred when it su[ ]a sponte improperly ordered in the decree that the provisions of spousal support be 'not subject to Court modification.' " In addition, Husband "alleged that the parties had agreed that they would not remarry, and that the parties' financial circumstances had altered considerably." *Andrulonis I, supra,* slip op. at 5. Thus, Husband asked the court, pursuant to Maryland Code (1984), Family Law Article ("F.L."), "Sect. 8–101; Sect. 8–103(b) and (c); [2] Sect. 8–105(b); Sect. 11–101; Sect 11–106; Sect. 11–107; and Sect. 11–108,[3] to modify the amount of and/or to terminate further payment of Spousal support by [Husband] to [Wife] ordered in the Divorce Decree dated November 30, 1995." Wife filed a motion to dismiss, which the court granted. Subsequently,

---

2. F.L. § 8–103 states, in part:

 (b) *Exception for provision concerning support of spouse.*—The court may modify any provision of a deed, agreement, or settlement with respect to spousal support executed on or after January 1, 1976, regardless of how the provision is stated, unless there is a provision that specifically states that the provisions with respect to spousal support are not subject to any court modification.

 (c) *Certain exceptions for provision concerning alimony or support of spouse.*—The court may modify any provision of a deed, agreement, or settlement with respect to alimony or spousal support executed on or after April 13, 1976, regardless of how the provision is stated, unless there is:

 (1) an express waiver of alimony or spousal support; or

 (2) a provision that specifically states that the provisions with respect to alimony or spousal support are not subject to any court modification.

3. F.L. § 11–108 (Termination of alimony) states:

 Unless the parties agree otherwise, alimony terminates:

 (1) on the death of either party;

 (2) on the marriage of the recipient; or

 (3) if the court finds that termination is necessary to avoid a harsh and inequitable result.

the circuit court dismissed Husband's 1998 Complaint with prejudice.

Husband appealed to this Court on December 17, 1998. In affirming the circuit court's judgment, we stated:

[Husband] asserts that the trial court should have terminated or modified the alimony provision, despite the decree's stipulation that it is "not subject to Court modification." While appellant correctly states that, because the alimony provision in the Agreement was merged into the divorce decree, that portion of the Agreement has been extinguished, [Husband] is incorrect to urge that such merger necessarily permits the lower court to modify the alimony agreement. Rather, merger and incorporation simply determine the vehicle by which the provision may be enforced. When one provision of a legal document is incorporated into another, the former "shall be taken as part of the document in which the declaration is made as much as if it were set out at length therein." BLACK'S LAW DICTIONARY 391 (5th ed.). By contrast, when a provision of a legal document is merged into another, the former is extinguished by its "absorption into" the latter, and the merged document "ceases to have an independent existence." *Id.* at 511.

* * *

In the case *sub judice*, the alimony provision of the Agreement was merged into the divorce decree, thereby substituting the parties' rights regarding alimony in the Agreement for those in the divorce decree. As a result, the only legal document by which the alimony provision may be enforced is the divorce decree. The decree adopts in full, however, the Agreement's provision concerning alimony. Ergo, the substance of the alimony arrangement between the parties remains unchanged.

As a general rule, courts have the discretion to modify an alimony provision set forth in a settlement agreement. *See* F.L. § 8–105(b).... The court's authority to modify an alimony agreement is limited, however, by F.L. § 8–103(c)....

In the case at hand, the third paragraph within the alimony provision of the Agreement provides that "[e]ach party waives his or her right to have any court assume jurisdiction for the purpose of modifying this provision of this Agreement." The statement is a valid bar to modification under F.L. § 8–103(c)(2) because it makes clear that the modification prohibition applies to the alimony section of the Agreement. *See [Shapiro v.] Shapiro,* 346 Md. [648,] 662–63, 697 A.2d 1342 [(1997)]. Consequently, the judge who drafted the parties' divorce decree was correct to include the alimony provision, without modification, in the divorce decree.

Likewise, the clause immediately following the alimony provision in the divorce decree, providing that alimony is "not subject to Court modification," is also a valid prohibition on the modification of the arrangement. . . .

[Husband] . . . insist[s] that equitable considerations should permit modification of the amount of alimony that he is presently paying. . . .

Pursuant to the alimony language adopted in the divorce decree, [Husband] must pay [Wife] alimony in the amount of $4,000 per month until he terminates his employment. After terminating his employment, [Husband] will be obligated to pay [Wife] fifty percent of his post-employment income. Nothing in the alimony provision provides that the amount of alimony shall be modified under other circumstances. In addition, no other portion of the Agreement provides that modification is permitted if the parties remarry or if their financial circumstances change. Consistent with the Agreement, the divorce decree does not provide for modification of alimony, whether for equitable reasons or otherwise.

*Andrulonis I, supra,* slip op. at 9–14. On July 30, 1999, the court issued an immediate earnings withholding order directing Husband to pay alimony by way of a wage lien.

Husband petitioned the Court of Appeals for certiorari. On December 23, 1999, the Court of Appeals denied Husband's

petition, stating that "there has been no showing that review by certiorari is desirable and in the public interest."

On February 21, 2003, the Court of Appeals decided *Moore v. Jacobsen,* 373 Md. 185, 817 A.2d 212 (2003), and held that, "unless an agreement states explicitly that alimony survives a party's remarriage, alimony terminates on the marriage of the recipient spouse." *Id.* at 187, 817 A.2d 212. According to the *Jacobsen* Court, "the provision in the parties' separation agreement obligating the husband to pay alimony to the wife terminated upon the wife's remarriage, despite the fact that the agreement provided that alimony was 'non-modifiable' by a court and payable for a term of seven years, but did not make any express reference to [F.L.] § 11–108 or the effect of remarriage of the wife upon the right to receive alimony." *Id.*

Relying on *Jacobsen,* Husband filed his 2008 Complaint. Husband asked the court to strike and/or withdraw the immediate earnings withholding order issued in 1999 and sought "judgment against [Wife] for three (3) years of wrongful and unlawful taking of monies thereunder." According to Husband, their Agreement did not "specifically contain in writing the required 'explicit provision' that alimony 'shall not terminate upon remarriage,' " pursuant to *Jacobsen* and, therefore, the court should invalidate the wage lien and order Wife to return the alimony paid for the preceding three years, totaling $144,000.00. (Emphasis omitted). Husband also noted that his 1998 Complaint was raised and decided under F.L. § 8–103, while his 2008 Complaint was brought pursuant to F.L. § 11–108.

On July 2, 2008, Wife filed a motion to dismiss Husband's 2008 Complaint. On July 24, 2008, Husband filed an opposition to that motion. Through a motions ruling dated August 8, 2008, the circuit court, Hon. John F. Fader, II, invited each party "to file an amendment to their respective motions . . . no later than Tuesday, September 23, 2008." Judge Fader determined that Husband's 2008 Complaint, seeking to strike the earnings withholding order, "is a distinction without difference from the issue previously litigated in this case as to the

agreement between the parties and whether that agreement by the Husband to pay to the Wife alimony in the amount of $4,000 per month survived her remarriage." Thus, Judge Fader asked the parties "whether there is any equitable doctrine that allows the reported and now controlling *Jacobsen* case to trump and foreclose the issue that is the law of this case," which was stated in *Andrulonis I.*

Both parties submitted supplemental memoranda. On October 2, 2008, Judge Fader requested a hearing on the matter. In a written memorandum, Judge Fader laid out the issue to be decided:

> [Wife] claims that the law of the case precludes this court's revisit to determine anew this issue, as this court previously decided the issue against the payor. [Husband] claims that a decision by the Court of Appeals in 2003, decided subsequent to this court's decision on the issue, is in conflict with a prior decision by this court and the newer and subsequent Court of Appeals decision allows him to bring anew his contention to the court that alimony should be terminated and to recoup money he should not have had to pay over many years.

A hearing was held on November 14, 2008, with the Hon. Michael J. Finifter presiding. After hearing argument on the matter, Judge Finifter ruled: "[T]here is no equitable doctrine that allows the controlling case of *Moore v. Jacobs[e]n* to trump and foreclose the issue that is the law of this case." On November 29, 2008, the court dismissed Husband's 2008 Complaint. Husband timely appealed.

### Standard of Review

 "We review *de novo* a trial court's granting of a motion to dismiss," *Monarc Constr., Inc. v. Aris Corp.,* 188 Md.App. 377, 384, 981 A.2d 822 (2009) (citation omitted), to "'determine whether the complaint, on its face, discloses a legally sufficient cause of action.'" *Schisler v. State,* 177 Md.App. 731, 743, 938 A.2d 57 (2007) (quoting *Fioretti v. Md. State Bd. of Dental Exam'rs,* 351 Md. 66, 72, 716 A.2d 258 (1998)). "In conducting our analysis, we ... 'accept all well-

pled facts in the complaint, and reasonable inferences drawn from them, in a light most favorable to the non-moving party.'" *Gosain v. County Council for Prince George's County*, 178 Md.App. 90, 95, 940 A.2d 1132 (quoting *Sprenger v. Pub. Serv. Comm'n of Md.*, 400 Md. 1, 21, 926 A.2d 238 (2007)), *cert. granted*, 405 Md. 62, 949 A.2d 651 (2008). "Ultimately, 'dismissal is proper only if the alleged facts and permissible inferences, so viewed, would, if proven, nonetheless fail to afford relief to the plaintiff.'" *Monarc, supra*, 188 Md.App. at 384, 981 A.2d 822 (quoting *Adamson v. Corr. Med. Servs., Inc.*, 359 Md. 238, 246, 753 A.2d 501 (2000)). "'[B]ecause we must deem the facts to be true, our task is confined to determining whether the trial court was legally correct in its decision to dismiss.'" *Id.* (quoting *Adamson, supra*, 359 Md. at 246, 753 A.2d 501); *see also Fioretti, supra*, 351 Md. at 72, 716 A.2d 258 ("The proper standard for reviewing the grant of a motion to dismiss is whether the trial court was legally correct.") (Citations omitted).

## Discussion

■ Husband argues that the circuit court erred in dismissing his 2008 Complaint. Relying on *Jacobsen* and F.L. § 11–108(b), Husband asks this Court to "strike and/or withdraw" the earnings withholding order, arguing that his wages are continuously "being wrongfully withheld" because Wife remarried in 1998. Meanwhile, Wife argues that *Jacobsen* is inapplicable. Wife further contends that the issue raised by Husband in this case is "the same issue raised in his 1998 Complaint" and, therefore, his claim is barred by the doctrines of: law of the case, collateral estoppel, and res judicata.

We agree with Wife's assertion that consideration of the earnings withholding order in this appeal would lead us to revisit the issue of alimony. We disagree with the remainder of Wife's contentions, however, as a review of the record reveals that Husband's 2008 Complaint is not barred by the aforementioned legal doctrines. Rather, the holding announced by the Court of Appeals in *Jacobsen* dictates that the

alimony in this case should be terminated, due to Wife's remarriage.

## I. Law of the Case

▮▮▮ "The law of the case doctrine, specifically a subset of the doctrine known as 'the mandate rule,' prevents trial courts from dismissing appellate judgment and re-litigating matters already resolved by the appellate court." *Stokes v. Am. Airlines, Inc.*, 142 Md.App. 440, 446, 790 A.2d 699 (2002) (citations omitted). Under that doctrine, "a trial court is bound by the decision of an appellate court in the case before it ... 'unless [the ruling is] changed or modified after reargument, and neither the questions decided nor the ones that could have been raised and decided are available to be raised in a subsequent appeal.' " *Chesley v. Goldstein & Baron*, 145 Md.App. 605, 630, 806 A.2d 296 (2002) (quoting *Turner v. Hous. Auth. of Balt. City*, 364 Md. 24, 32, 770 A.2d 671 (2001)). "The doctrine, however, is a judicial creation borne of procedure and convenience, rather than an inflexible rule of law." *Stokes, supra*, 142 Md.App. at 446, 790 A.2d 699 (citing *Hawes v. Liberty Homes, Inc.*, 100 Md.App. 222, 230, 640 A.2d 743 (1994)). "[W]hile the doctrine binds a Maryland trial court to a prior decision of this Court in the same case, this Court may, but need not, invoke the doctrine; in other words, we are not precluded from opening up and reconsidering an issue we decided earlier, in the same case, when exceptional circumstances so warrant." *Chesley, supra*, 145 Md.App. at 633, 806 A.2d 296 (citing *Hawes, supra*, 100 Md.App. at 230, 640 A.2d 743). "Thus, 'decisions rendered by a prior appellate panel [of the Court of Special Appeals] will generally govern the second appeal, unless (1) the previous decision [was] patently inconsistent with controlling principles announced by a higher court and is therefore clearly incorrect, *and* (2) following the previous decision would create manifest injustice.' " *Id.* (quoting *Hawes, supra*, 100 Md.App. at 231, 640 A.2d 743) (additional citations omitted) (alterations and emphasis in original); *accord Corby v. McCarthy*, 154 Md.App. 446, 479–80, 840 A.2d 188 (2003); *see also Turner, supra*, 364 Md. at 34–35, 770 A.2d

671 ("It is well settled that the law of the case doctrine does not apply when ... controlling authority has since made a contrary decision on the law applicable to such issues.") (Citations omitted).

A brief review of the chronology of the case is helpful in our analysis: Husband filed his 1998 Complaint, which the circuit court dismissed. A year later, this Court affirmed that decision, holding that dismissal was proper because "there is no basis for modifying the alimony as set forth in the divorce decree." *Andrulonis I, supra,* slip op. at 15. An immediate earnings withholding order, directing Husband to pay alimony by way of a wage lien, was subsequently issued. In 2003, the Court of Appeals decided *Jacobsen, supra,* 373 Md. 185, 817 A.2d 212, and held that, "unless an agreement states explicitly that alimony survives a party's remarriage, alimony terminates on the marriage of the recipient spouse." *Id.* at 187, 817 A.2d 212. Relying on *Jacobsen,* Husband brought his second suit in 2008, which the circuit court again dismissed.

Indeed, when Husband's 2008 Complaint came before the circuit court, that court was bound by the law of the case that we set forth in *Andrulonis I.* This Court, on the other hand, need not invoke the doctrine of law of the case under the facts and circumstances of this case. *See Chesley, supra,* 145 Md.App. at 633, 806 A.2d 296 (citation omitted). Instead, because the Court of Appeals decided *Jacobsen* between the time Husband filed his first and second complaints, the principles announced by the *Jacobsen* Court are now controlling upon this Court. *See id.; see also Md. Cas. Co. v. S. Norfolk,* 54 F.2d 1032, 1039 (4th Cir.1932) ("The former decision of this court became the law of the case; and, while we have the power on a subsequent appeal to reverse it, we exercise the power only in the most unusual circumstances, as where ... in a case involving the interpretation of a state statute or rule of property, the Supreme Court of a state has rendered a decision in direct conflict with our former decision."). Turning again to this case, absent an explicit agreement, in writing, that support shall not terminate upon remarriage, "the statu-

tory presumption that alimony terminates upon remarriage controls." *Jacobsen, supra,* 373 Md. at 189–90, 817 A.2d 212.

## II. Collateral Estoppel (Issue Preclusion)

We have articulated the doctrine of collateral estoppel, or issue preclusion, as follows: "When an issue of fact or law is actually litigated and determined by a valid and final judgment, . . . the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *R & D 2001, LLC v. Rice,* 402 Md. 648, 663, 938 A.2d 839 (2008) (citations and internal quotation marks omitted). Therefore, the doctrine "looks to issues of fact or law that were actually decided in an earlier action, whether or not on the same claim." *Id.* In applying this rule, we consider: "1) the identity of parties, 2) the actual litigation of an issue of fact or law, 3) the essentialness of the determination to the judgment and 4) the appealability of that determination by the party against whom the issue preclusion is being asserted." *Cassidy v. Bd. of Educ. of Prince George's County,* 316 Md. 50, 62, 557 A.2d 227 (1989) (citing *Murray Int'l Freight Corp. v. Graham,* 315 Md. 543, 549, 555 A.2d 502 (1989)).

In *Esslinger v. Balt. City,* 95 Md.App. 607, 622 A.2d 774 (1993), we stated that "collateral estoppel is inapplicable to an issue of law . . ., when there is an 'intervening change in the applicable legal context.' " *Id.* at 627, 622 A.2d 774 (citing Restatement (Second) of Judgment § 28(2) (1980)). Further, we noted that "decisions stating 'new law,' [had previously been] held to constitute an 'intervening change in the applicable legal context' sufficient to make collateral estoppel inapplicable." *Id.* at 629, 622 A.2d 774 (citing *Cassidy, supra,* 316 Md. 50, 557 A.2d 227) (additional citations omitted). Thus, because the issue of termination of alimony based on F.L. § 11–108 was decided by the Court of Appeals in *Jacobsen* between the time Husband filed his first and second complaints, we hold that the doctrine of collateral estoppel (issue preclusion) does not apply in this case.

## III. Res Judicata (Claim Preclusion)

 "Res judicata, or the doctrine of claim preclusion, 'bars the relitigation of a claim if there is a final judgment in a previous litigation where the parties, the subject matter and causes of action are identical or substantially identical as to issues actually litigated and as to those which could have or should have been raised in the previous litigation.'" *Monarc, supra,* 188 Md.App. at 388, 981 A.2d 822 (quoting *R & D 2001, supra,* 402 Md. at 663, 938 A.2d 839) (emphasis omitted). To invoke the doctrine, three elements must be present:

> (1) the parties in the present litigation are the same or in privity with the parties to the earlier litigation; (2) the claim presented in the current action is identical to that determined or that which could have been raised and determined in the prior litigation; and (3) there was a final judgment on the merits in the prior litigation.

*Id.* (quoting *R & D 2001, supra,* 402 Md. at 663, 938 A.2d 839). In this case, it is undisputed that the parties in the present litigation are the same and that there was a final judgment in the prior litigation. Thus, we look to see whether the "two causes of action are the same." *Id.* at 388–89, 981 A.2d 822 (quoting *John Crane, Inc. v. Puller,* 169 Md.App. 1, 25, 899 A.2d 879 (2006)).

In *Kent County Bd. of Educ. v. Bilbrough,* 309 Md. 487, 494, 525 A.2d 232 (1987), the Court of Appeals determined "the scope of a 'claim' in the preclusion context." In resolving the question of identity of claims, the Court adopted the approach found in the Restatement (Second) of Judgments ("Restatement") § 24 (1982):

> (1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar ..., the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.
>
> (2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined

pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

*Kent County, supra,* 309 Md. at 498, 525 A.2d 232 (footnote omitted), *accord Anne Arundel County Bd. of Educ. v. Norville,* 390 Md. 93, 108–09, 887 A.2d 1029 (2005). Although "a mere change in the legal theory, applied to the same set of facts previously litigated, will not in and of itself avoid claim preclusion," *Kent County, supra,* at 495, 525 A.2d 232, "the scope of a cause of action for claim preclusion purposes is *not* as broad as the scope of permissible joinder under modern pleading codes." *Id.* at 497, 525 A.2d 232 (emphasis in original).

Generally, "when a state statute, which was the basis of the first action, is held unconstitutional prior to the second action, *res judicata* is applied to bar the second action." *Esslinger, supra,* 95 Md.App. at 626, 622 A.2d 774 (citations omitted). But, "if there has been prior to a decision in the second action a true 'change in circumstances,' *res judicata* might well be inapplicable." *Id.* at 626 n. 6, 622 A.2d 774 (citing Restatement § 24 cmt. f); *see also* Restatement § 26 cmt. e ("The adjudication of a particular action may in retrospect appear to create such inequities in the context of a statutory scheme as a whole that a second action to correct the inequity may be called for even though it would normally be precluded as arising upon the same claim."); Restatement § 26 cmt. f ("the courts, unaided by statute, may conclude that strong substantive policies favor such allowance with respect to cases involving anticipated continuing or recurrent wrongs"). Such is the case here.

As the Court of Appeals stated in *Jacobsen:*

The *public policy* set forth in § 11–108 clearly states that alimony does not survive the remarriage of the recipient. To create an exception to that policy, an agreement must be equally clear. We think a bright-line rule requiring an

express provision providing that support shall not terminate upon remarriage fosters certainty, resolves ambiguity and reduces litigation.

*Jacobsen, supra,* 373 Md. at 190, 817 A.2d 212 (emphasis added). Precluding Husband's claim in this case would not only undermine the public policy grounded in F.L. § 11–108, but would foster a continuing wrong. Therefore, we hold that Husband was not barred by the doctrine of res judicata.[4]

For all of the foregoing reasons, we reverse the judgment of the circuit court. Alimony paid by Husband to Wife is hereby terminated as of the date of this decision, in accordance with *Jacobsen.*[5]

**JUDGMENT OF THE CIRCUIT COURT FOR BALTI-MORE COUNTY REVERSED. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**

---

**4.** It is also worth noting that Husband's 2008 Complaint, seeking withdrawal of the earnings withholding order and reimbursement of alimony paid, could arguably be considered a different "transaction" under *Kent County, supra,* 309 Md. at 498, 525 A.2d 232, because the earnings withholding order was not issued until after the previous litigation was concluded.

**5.** In so holding, we are not modifying or terminating Husband's obligations under the Agreement with regard to the "fifty percent (50%) share of ... Termination Payments, Extended Termination Payments, Temporary Disability Payments, or other type of post-employment wages, income, benefits or payments." As far as we can ascertain, these payments, as written in the Agreement, are pension benefits awarded to Wife and not subject to termination. We are also not requiring Wife to return past alimony paid by Husband prior to this decision.