76 A.3d 395

**John C. BRADLEY**

v.

**Sharon M. BRADLEY.**

**No. 402, Sept. Term, 2012.**

Court of Special Appeals of Maryland.

Sept. 6, 2013.

Reconsideration Denied Oct. 31, 2013.

230

Fredric J. Einhorn, Rockville, MD, for Appellant.

Rachel T. McGuckian (Rachel A. Shapiro, Miles & Stockbrifge, PC, on the brief), Rockville, MD, for Appellee.

Panel: MEREDITH, HOTTEN and IRMA S. RAKER, (Retired, specially assigned), JJ.

RAKER, J.

The Circuit Court for Montgomery County granted an absolute divorce to John Bradley, appellant, and Sharon Bradley, appellee. Relevant to this appeal, the parties entered into a separation agreement which provided that appellant pay appellee indefinite alimony and prohibited the parties from seeking a court order modifying the indefinite alimony provision of the agreement. Nonetheless, appellant sought to terminate his obligation to pay appellee indefinite alimony on the ground that termination was "necessary to avoid a harsh and inequitable result." The Circuit Court for Montgomery County dismissed appellant's motion to terminate alimony. Before this Court, appellant presents one issue for our review: whether the trial court erred in dismissing his petition to terminate alimony. We shall affirm.

I.

The parties were married on November 19, 1966. On April 16, 1985, the Circuit Court for Montgomery County granted the parties an absolute divorce and incorporated, but did not merge, their separation agreement into the divorce decree. On September 4, 1998, the parties executed a Second Amendment to Voluntary Separation and Property Settlement Agreement ("Second Amendment"). The relevant portion of the amendment states as follows:

"Husband shall pay to Wife, for her support, the sum of Twenty–Six Thousand Eight Hundred Dollars ($26,800.00) per year accounting from the date hereof, payable in equal monthly installments of Two Thousand Two Hundred and Thirty–Three Dollars ($2,233.33) on the first day of each month, *for so long as the parties live separate and apart and until the first to occur of any of the following events:*

*(a) remarriage of Wife, (b) death of either party.* The aforesaid provision shall not be subject to modification by any court, unless the Wife becomes disabled, and is unable to perform any duties or earn any income in the teaching and clerical fields. Her disability must be certified by two (2) physicians who are licensed in the State of Maryland, one of whom shall be the Wife's current treating internist or cardiologist.

The parties expressly waive the right ever hereafter to have any court change or make a different provision for the support and maintenance of Wife, except as provided herein, and they further expressly covenant and agree that under no circumstances, except those provided herein, shall either of them hereafter apply to any court for an increase or decrease in the amount of or a modification of the terms of such support and maintenance as herein provided." (Emphasis added).

On October 27, 1998, the Circuit Court for Montgomery County incorporated, but did not merge, the Second Amendment into the divorce decree.

On September 30, 2011, appellant filed a petition to terminate alimony in the Circuit Court for Montgomery County. In his petition, he argued that termination of alimony was necessary to avoid a harsh and inequitable result because, since October 1998, he has become permanently disabled such that he is unable to work, has no income, and filed for Chapter 7 Bankruptcy. He claimed that his current income from Social Security is $2,110 and that, after medical expenses, he has only $770 to cover his other living expenses.

Appellee, who has never remarried, filed a motion to dismiss appellant's petition. She argued that dismissal was required because appellant had waived his right to petition a court to make "a different provision for the support and maintenance," except as provided in the agreement, and that appellant did not cite any applicable exception in his petition. The issue before the trial court was the construction of Maryland Code

(1984, 2006 Repl. Vol.) § 11–108 of the Family Law Article,[1] which states as follows:

"Unless the parties agree otherwise, alimony terminates:

(1) on the death of either party

(2) on the remarriage of the recipient; or

(3) if the court finds that termination is necessary to avoid a harsh and inequitable result."

Appellant responded by noting that appellee did not argue that termination was unnecessary to avoid a harsh and inequitable result. Further, appellant cited *Moore v. Jacobsen,* 373 Md. 185, 817 A.2d 212 (2003), in support of the proposition that a court could order the termination of alimony, even if the parties' separation agreement contained a non-modification clause, unless the parties explicitly agreed that alimony would not terminate even if termination were necessary to avoid a harsh and inequitable result. He argues that, in this agreement, there was no explicit agreement as to § 11–108(3), termination to avoid a harsh and inequitable result.

The circuit court dismissed the petition to terminate alimony. In doing so, the circuit court stated that the termination provision barred the court from terminating appellant's obligation to pay appellee alimony. Appellant noted this timely appeal.

## II.

Before this Court, appellant argues that *Moore* enables a circuit court to terminate a party's obligation to pay alimony in order to avoid a harsh and inequitable result so long as the parties did not expressly agree that avoidance of a harsh and inequitable result would not terminate the obligation to pay alimony. He argues that since the parties did not otherwise agree in the separation agreement, a court may terminate his obligation to pay alimony.

---

1. All subsequent references to Maryland Code (1984, 2006 Repl. Vol.) herein shall be to the Family Law Article.

Appellee argues that the court dismissed correctly appellant's petition because the parties, in their voluntary separation agreement, agreed not to terminate alimony and agreed not to subject the agreement to court review. The parties did so, she argues, by including (1) a no-modification provision in which they clearly and unequivocally waived any right to court-approved modification and (2) a termination provision that states expressly when and under what circumstances alimony could terminate. Both provisions prohibit the court from terminating alimony. Thus, she concludes, in the words of the statute, the parties "agreed otherwise" and hence, the provisions in the parties agreement prohibit a court from terminating alimony pursuant to § 11–108(3). She maintains that this Court should not extend the rationale set out by the Court of Appeals in *Moore* because the *Moore* rationale applies only to cases where termination occurs by operation of law and does not require court action or discretion.

### III.

We review a trial court's grant of a motion to dismiss *de novo*. *Andrulonis v. Andrulonis*, 193 Md.App. 601, 612, 998 A.2d 898, 905 (2010). In conducting this review, we "assume the truth of all of the well-pled facts in the complaint and attached exhibits, and the reasonable inferences drawn from them, in a light most favorable to the non-moving party." *Murphy v. Fishman*, 207 Md.App. 269, 281, 52 A.3d 130, 137 (2012). Dismissal is proper only if the well-pled facts and permissible inferences would, if proven, nonetheless fail to afford relief to the plaintiff. *Monarc Const. Inc. v. Aris Corp.*, 188 Md.App. 377, 384, 981 A.2d 822, 826 (2009). Because we deem the facts to be true, we determine only whether the trial court was legally correct in its decision to dismiss. *Andrulonis*, 193 Md.App. at 613, 998 A.2d at 905.

Divorcing spouses may enter into agreements as to alimony payments. Section 8–101(a). To determine whether the circuit court dismissed appellant's petition to terminate alimony properly, we interpret the terms of the separation agreement

because the parties included a provision barring court modification of alimony. Section 8–103(b).

In interpreting a separation agreement, we apply the rules governing the construction of contracts. *Campitelli v. Johnston,* 134 Md.App. 689, 696, 761 A.2d 369, 372 (2000). Our goal is to "give effect to the intention of the contracting parties." *Langston v. Langston,* 136 Md.App. 203, 223, 764 A.2d 378, 389 (2000). Nonetheless, contracts are subject to the law of objective interpretation and we give effect to the plain language of the clear and unambiguous provisions of the contract, "even when the language is not congruent with the parties' actual intent at the time of the creation of the contract." *Id.* at 224, 764 A.2d 378, 389. We presume that parties know the law when entering into a contract and read into the agreement all applicable or relevant laws, except where a contrary intention is evident. *Lema v. Bank of Am., N.A.,* 375 Md. 625, 645, 826 A.2d 504, 516 (2003).

Section 11–108, which provides for the termination of alimony upon the occurrence of certain events, states as follows:

"Unless the parties agree otherwise, alimony terminates:

(1) on the death of either party;

(2) on the marriage of the recipient; or

(3) if the court finds that termination is necessary to avoid a harsh and inequitable result."

In *Moore v. Jacobsen,* 373 Md. 185, 817 A.2d 212 (2003), the Court of Appeals discussed whether the parties have "agreed otherwise," within the meaning of § 11–108, as to the termination of alimony upon the remarriage of the recipient spouse. The divorcing parties agreed that the husband would pay the wife $833.33 in alimony every month and that no court would "have the power to modify" the agreement with respect to alimony. The separation agreement did not mention whether remarriage would terminate the wife's right to alimony. The wife remarried, and the husband petitioned for termination of alimony. The circuit court denied the husband's petition, and the husband appealed.

The Court held that, for a couple to "agree otherwise," they must include "an express provision providing that support shall not terminate upon remarriage" in their separation agreement, even when the parties agreed that alimony is nonmodifiable. *Id.* at 190, 817 A.2d at 215. The Court stated that such a rule "fosters certainty, resolves ambiguity and reduces litigation." *Id.*, 817 A.2d at 215. In reaching this conclusion, the Court noted that in Maryland "alimony historically terminated upon remarriage of the recipient spouse" as well as "the right of parties to contract in the area of domestic relations." *Id.*, 817 A.2d at 215. The Court reasoned as follows:

"In contrast to modification, which requires court action, termination occurs by operation of law and does not require court action."

*Id.* at 191, 817 A.2d at 216.

The rule the Court of Appeals announced in *Moore* is a rule the court employs when construing a separation agreement. The parties in the case *sub judice* disagree as to whether we should extend the rule of construction announced in *Moore* to construe separation agreements where the parties have not stated explicitly that the payment of alimony is not terminable when circumstances arise that make termination necessary to avoid a harsh and inequitable result. We decline to do so.

The parties' agreement is very clear. It is terminable only upon the remarriage of appellee or death of either party. Because the parties "waived the right ever hereafter to have any court change or make a different provision for the support and maintenance of Wife," the termination of appellant's obligation to pay alimony is terminable only upon appellee's remarriage or the death of either party.

■■ Extending *Moore* to instances where a party claims termination of alimony is necessary to "avoid a harsh and inequitable result" would not foster certainty or reduce litigation. Unlike termination of alimony upon remarriage, termination of alimony to avoid a harsh and inequitable result does not operate as a matter of law and requires a court to examine

facts and circumstances to determine whether harsh and inequitable results exist. Whether a result is harsh and inequitable is a subjective determination. *Blaine v. Blaine,* 97 Md.App. 689, 706, 632 A.2d 191, 200 (1993). A trial court must conduct a factual inquiry to reach such a conclusion. *See, e.g., Harvey v. Marshall,* 158 Md.App. 355, 367, 857 A.2d 529, 536 (2004) (declining to extend *Moore* to the termination of child support payments because court action is clearly required when a child support order is terminated or modified).

Further, there is no strong policy prohibiting a couple from agreeing to an indefinite alimony provision that is not terminable, even if termination in the future might be appropriate to avoid a harsh and inequitable result. The first statutory grant of authority to a court to terminate alimony upon a showing that termination was necessary to avoid a harsh and inequitable result appeared in 1980. Maryland Code (1957, 1981 Repl. Vol.) § 5(b) of Article 16. Section 5(b) of Article 16, for the first time in a statute, "defined the time at which the obligation to pay alimony should terminate." *McAlear v. McAlear,* 298 Md. 320, 331, 469 A.2d 1256, 1261 (1984). Section 5(b) of Article 16 stated as follows:

> "Unless the parties otherwise agree, the obligation to pay alimony under this title shall terminate upon the death of either party, the marriage of the party receiving alimony, or if the court finds that termination is necessary to avoid a harsh and inequitable result."

Further, the practice of Maryland Courts in the early twentieth century was to decline to terminate alimony to avoid a harsh or inequitable result where the divorcing spouses agreed as to alimony. *Winkel v. Winkel,* 178 Md. 489, 504–506, 15 A.2d 914, 921–22 (1940); *Marshall v. Marshall,* 164 Md. 107, 112, 163 A. 874, 875 (1933). The circuit court could terminate alimony to avoid a harsh and inequitable result if the court retained jurisdiction in equity to modify a spouse's duty to pay alimony, but the court did not have jurisdiction to terminate alimony when the parties agreed previously upon an allowance to the recipient spouse. *Winkel,* 178 Md. at 504–506, 15 A.2d at 921–22.

**238**

Because the reasons for the bright-line rule the Court of Appeals announced in *Moore* are absent from cases in which a party petitions for modification of alimony in order to avoid a harsh and inequitable result, we decline to expand the *Moore* rule to cases in which the payee spouse petitions the court to terminate alimony to avoid a harsh and inequitable result.

*JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.*