770 A.2d 671

**Yolanda TURNER,**

v.

**HOUSING AUTHORITY OF BALTIMORE CITY.**

**No. 60, Sept. Term, 1999.**

Court of Appeals of Maryland.

April 17, 2001.

Gregory Leo Countess (Legal Aid Bureau, Inc., on brief), Baltimore, for appellant.

Melvin J. Jews, Associate General Counsel (Housing Authority of Baltimore City, on brief), Baltimore, for appellee.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY,* RAKER, WILNER, CATHELL, and HARRELL, JJ.

BELL, Chief Judge.

In this case, Yolanda Turner, the appellant, in addition to issues relating to the attempts by the Housing Authority of Baltimore City, the appellee, as landlord, to terminate her lease, presents the question whether, based on a ruling by a federal district court in another case, the Circuit Court for Baltimore City may reinstate one of its judgments that the Court of Special Appeals had previously reversed and remanded. When initially in the Circuit Court, the appellant argued that the court was without jurisdiction to consider the case, citing in support a Consent Decree in which the City and a representative of a class had entered into in 1984, providing for grievance hearings for public housing tenants prior to eviction. The Circuit Court determined that the Consent Decree did not apply and proceeded to dispose of the case, on the merits, in favor of the appellee. The Court of Special Appeals saw it differently, deciding that the Consent Decree did, in fact, apply. Thus it reversed and remanded to the Circuit Court, where subsequently, the appellee, relying on the intervening decision of the United States District Court vacating the Consent Decree, moved to have the previous judgment reinstated. Agreeing with the appellee, the Circuit Court concluded that it had that authority and so reinstated its prior judgment. We shall reverse.

---

* Rodowsky, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

The premises leased by the appellant from the appellee were the subject of a search and seizure warrant, which, upon execution uncovered "... six pink-topped vials with residue, one purple-topped vial with white powder and a non-conventional smoking pipe as well as personal papers." The appellant was arrested and charged with narcotics violations. Subsequent laboratory analysis revealed that the non-conventional pipe contained residue of a controlled dangerous substance. Notwithstanding this occurrence, the appellee continued to accept the appellant's rent and did so for each of the months remaining on the appellant's lease. Thereafter, in October, less than three months after being charged with the narcotics violation, the appellant executed a new lease.[1] Less than

---

**1.** The lease which the appellant entered into on October 17, 1995 contained the following terms:

"Section 14. Termination of Lease

"a. Management shall not terminate or refuse to renew this Lease other than for serious or repeated violation of material terms of the Lease, including, but not limited to, failure to make payments at the time and in the amount they are due under the Lease, or to fulfill the Tenant obligations set forth in Section 9 of the Lease, or for good cause.

"b. Either of the following types of criminal activity by the Tenant, any member of the Tenant's household or a guest under the Tenant's control, shall be cause for termination of tenancy:

"1) Any criminal activity that threatens the health, safety or right to peaceful enjoyment of the premises by Tenant's neighbors or other residents.

"2) Any drug-related criminal activity on or near such premises/Tenant's dwelling unit.

"3) Any criminal activity that threatens the health of employees of management, which includes Management's efforts to maintain a drug-free environment.

"c. Management shall give written notice of termination of this Lease of:

"1) Fourteen (14) days which shall run concurrent[ly] with any local laws, as set forth in the applicable HUD regulations, in the case of the failure to pay rent;

"2) A reasonable time, not less than thirty (30) days, considering the seriousness of the situation when the health or safety of neighbors, other tenants, or of Management employees is threatened, including, but not limited to:

"a) Criminal activity by Tenant, household member or guest under Tenant's control, including any drug-related criminal activity on or near Tenant's premises/dwelling unit.

three months after executing the lease, she received notice to vacate the premises. The notice alleged violations of material terms of the appellant's lease, referring specifically to her arrest and information contained in a police report and a search and seizure warrant which led to that arrest. That information indicated that the appellant was engaging in drug-related criminal activity on or near her leased premises.

Despite being advised that she had no right to a grievance hearing, the appellant asked for an informal grievance, which was denied. Thereafter, the appellee filed, in the District Court of Maryland, sitting in Baltimore City, an action alleging that the appellant was in breach of her lease. That action was removed to the Circuit Court for Baltimore City, upon the appellant's prayer for jury trial. It was tried in that court without a jury, the appellant having waived the jury, and judgment was entered for the appellee. One of the issues addressed in the Circuit Court was whether the appellee was bound by the Consent Decree in *Lacy v. Housing Authority of Baltimore City*, No. 84–2431 (D.Md.1984). In that case, a consent decree entered into by the Housing Authority of Baltimore City and its tenant required, as a matter of due process, that there be a tenant grievance hearing prior to the initiation of eviction proceedings. Relying on that consent decree, the appellant moved to dismiss the appellee's breach of lease action. She argued that the Circuit Court lacked jurisdiction to hear the case, the appellee having refused her the administrative grievance hearing before HABC to which she was entitled.

---

"b) Presence of illegal drugs and/or weapons seized in an HABC unit by any law enforcement officer.

"c) Any fire on HABC premises which results from the deliberate action or inaction of the Tenant, member of the Tenant's household or a guest under the Tenant's control.

"3) Sixty (60) days in all other cases.

"d. This Lease may be terminated by the Tenant at any time by giving thirty (30) days advance written notice to Management in the manner specified in Section 13 b above. Failure to give notice will result in a continuation of the rent charge not to exceed 15 days from the date the vacancy becomes known to Management.

Countering, the appellee argued that the consent decree did not apply to this case. Noting that the regulation on which the consent decree was based had been amended, it maintained that the amended regulation, and not the consent decree, applied, the former having superceded the latter. The Circuit Court agreed with the appellee and, thus, denied the motion to dismiss. It also opined:

"I am satisfied by-and this in respect to the merits, also, I am satisfied by the preponderance of the evidence that the tenant in this case, Yolanda Turner, on or about August 16, 1995, had in her apartment in plain view a pipe with cocaine residue, and its inferable from that being in plain view and the fact that she left, that she knew about it or allowed another member of the household or guest under tenant's control to have or use of or be in possession of that pipe with residue. I therefore find that pipe with residue. I therefore find that she was involved in drug-related criminal activity at or near the premises of the dwelling unit. Being in possession of that cocaine-but in any case she is clearly charged with paraphernalia and that cocaine. Therefore, I am satisfied that the HABC was empowered to evict her accordingly."

The appellant noted an appeal to the Court of Special Appeals. Although she presented five issues, only the last, "Did the trial court err by finding that a federal court consent decree did not apply in this case, thereby depriving Turner of a tenant grievance hearing?," addresses the issue before this Court. Nor did the appellee, so far as this record reveals, ask the court to determine the effect on this case of a parallel proceeding that it filed in the federal case in the federal court to vacate the consent decree. The intermediate appellate court, in an unreported opinion, reversed the judgment of the Circuit Court. It concluded, "that the *Lacy* consent decree applies, and that the federal court has continuing jurisdiction to enforce it; accordingly HABC is bound by its provisions unless and until the federal court modifies the consent decree." The court's mandate was "JUDGMENT REVERSED.

CASE REMANDED TO THE CIRCUIT COURT FOR BAL-TIMORE CITY. COSTS TO BE PAID BY APPELLEE."

Subsequent to the remand—indeed a little more than a month later—the *Lacy* consent decree was vacated by the United States District Court pursuant to the appellee's Motion to Vacate Consent Decree.[2] Armed with this ruling, and not waiting for the resolution of the tenant's appeal,[3] the appellee

---

**2.** According to the United States District Court opinion, the challenge to the Consent Decree was initiated by the appellee in 1995, when the breach of lease action it filed against its tenant, Frieda Holloway, was stayed, pending a decision by the Federal District Court on the issue of the continuing viability of the consent decree it entered. Thus, the proceedings to vacate the consent decree and this case were proceeding on parallel tracks, but in different courts. The record does not reflect that there was ever any attempt in this case to join the issues or, as the District Court had done, to stay pending decision on the consent decree issue.

**3.** The Court of Appeals for the Fourth Circuit affirmed the decision of the District Court which vacated the *Lacy* consent decree, albeit after the Circuit Court in this case had reinstated it prior judgment. *Gilmore v. Housing Auth. of Baltimore City*, 170 F.3d 428 ( 4th Cir.1999). The court explained:

"In 1990, Congress amended the National Housing Act, eliminating the right to discovery from the list of procedural protections that must be provided under state law before a public housing authority can bypass the administrative hearing requirement, and allowing states to invoke the bypass provision not just in cases of evictions based on alleged endangerment of the health and safety of an employee or resent, but also in cases of evictions for drug-related offenses. *See* 42 U.S.C. § 1437d (k) (1990). The Department of Housing and Urban Development (HUD) duly altered the relevant regulations, and instituted a process whereby states could apply for a ruling from HUD as to whether their laws satisfied the procedural perquisities of the bypass provision. *See* 24 C.F.R. §§ 966.51(2)(i), 966.53(c) (1990). "In 1992, HUD issued a ruling confirming that Maryland's tenant laws met the procedural prerequisites. As a result of this ruling, Maryland public housing authorities, including HABC, obtained the authority to bypass the administrative hearing requirement in cases of evictions based on alleged endangerment of the health and safety of an employee or resident, or for drug-related offenses. On January 17, 1995, HABC duly revised its Tenant Grievance Policy and Appeals Procedure in order to remove the right to obtain administrative hearings in such cases.

\* \* \* \*

"[T]he proper test for determining whether the district court correctly vacated the consent decree is the two-prong test set out by the

filed, in the Circuit Court, a motion to reinstate its earlier judgment. The court granted the motion and, thus, rejected the appellant's contention that it was obliged to follow the mandate of the Court of Special Appeals. It reasoned:

> "The problem with that argument is that the underpinning of its decision was the Court of Special Appeals' conviction that the due process provisions of the Lacy consent decree required such a tenant grievance hearing unless and until the federal court modifies the consent decree. Therefore, it is illogical that this Court should ignore the fact that the Lacy consent decree has been vacated by the federal court and that its due process requirement no longer applies to the defendant here."

Following the appellant's appeal to the Court of Special Appeals, we issued the writ of certiorari, on our own motion, before any proceedings in that court.

At the threshold in this case is the issue of the propriety of the Circuit Court's reinstatement of its prior judgment, follow-

---

Supreme Court in *Rufo v. Inmates of the Suffolk County Jail*, 502 U.S. 367, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992). In *Rufo*, the Court held that a party seeking modification of a consent decree ... must first 'show[ ] a significant change either in factual conditions or in law.' *Id.* at 384, 112 S.Ct. 748. Provided that the party meets this initial burden, the reviewing court must determine whether the proposed modification of the consent decree—in this case, vacatur—is 'suitably tailored to the changed circumstance.' *Id.* at 391, 112 S.Ct. 748. "We agree with the district court that both prongs of the *Rufo* test were unambiguously satisfied in the instant case. First, a significant change in law occurred between the date of the entry of the consent decree and the date of the proposed modification: namely, the amendment of the National Housing Act, with concomitant changes to the relevant regulations, in 1990. As a direct result of these changes, HABC was no longer required to provide administrative hearings cases of evictions based on alleged endangerment of the health or safety of an employee or resident, or for drug-related offenses. Second, the proposed modification of the decree was suitably tailored to the changed circumstance: because the statutory administrative hearing requirement that the consent decree was originally entered to protect no longer existed, the consent decree was simply no longer necessary. Vacatur was therefore the appropriate modification. Because the district court correctly applied *Rufo* in vacating the consent decree, we affirm the district court's decision." *Id.* at 430.

ing a judgment by the Court of Special Appeals reversing and remanding that judgment. The appellant argues that a trial court may not reinstate its judgment after that judgment has been reversed on appellate review. More specifically as relates to the case *sub judice*, she asserts that following a judgment by the Court of Special Appeals, the Circuit Court no longer had jurisdiction to further rule on the issues that the appellate court's judgment resolved. Thus, the appellant says, the vacating of the *Lacy* consent decree, after the intermediate appellate court had issued its mandate could not have affected the court's decision and, consequently, the ultimate resolution of the case. She relies on *Buffin v. Hernandez*, 44 Md.App. 247, 408 A.2d 393 (1979) and *Korotki v. Springer*, 218 Md. 191, 145 A.2d 767 (1958).

The appellee submits, on the contrary, that the Circuit Court properly reinstated its judgment. Citing Md. Rule 8–604(d) [4] and noting that, in addition to holding that the consent decree applied, the Court of Special Appeals acknowledged the continuing jurisdiction of the federal court to enforce it and that "HABC is bound by its provisions unless and until the federal court modifies the consent decree," it concludes that the Circuit Court was justified in reinstating its judgment. Indeed, in the appellee's view, the Circuit Court acted consistently, and in accordance, with the mandate of the intermediate appellate court.

■ We agree with the appellant—the Circuit Court was not empowered to grant the appellee's motion to reinstate its judgment. This conclusion is required by our cases. The doctrine of the law of the case is well settled in this State. In *Waters v. Waters*, 28 Md. 11, 22 (1867), we stated:

"No principle is better established than that a decision of the Court of Appeals once pronounced in any case is binding upon the court below and upon this Court in the subsequent

---

4. Maryland Rule 8–604(d) provides, in part, that "upon remand, the lower court shall conduct any further proceedings necessary to determine the action in accordance with the opinion and order of the appellate court."

proceedings in the same case, and cannot be disregarded or called in question. It is the law of the case binding and conclusive upon the parties, not open to question or examination afterwards in the same case."

More recently, we explained it thusly:

" 'Once this Court has ruled upon a question properly presented on an appeal, or, if the ruling be contrary to a question that could have been raised and argued in that appeal on the then state of the record, as aforesaid, such a ruling becomes the "law of the case" and is binding on the litigants and courts alike, unless changed or modified after reargument, and neither the question decided nor the ones that could have been raised and decided are available to be raised in a subsequent appeal.' " (Citations omitted).

*Loveday v. State,* 296 Md. 226, 229, 462 A.2d 58, 59 (1983) (quoting *Fidelity–Baltimore Nat'l Bank & Trust Co. v. John Hancock Mut. Life Ins.Co.,* 217 Md. 367, 372, 142 A.2d 796, 798 (1958)). *See also Korotki v. Springer,* 218 Md. 191, 193–194, 145 A.2d 767, 768 (1958) (the law of the case applies whether the judgment on appeal is reversed or affirmed and it applies to "all matters decided by the appellate court"); *Chayt v. Board of Zoning Appeals,* 178 Md. 400, 404, 13 A.2d 614, 616 (1940) (trial court on remand may not reduce breadth of appellate-mandated injunction against zoning violation). Indeed, this Court has described the law of the case doctrine as "l[ying] somewhere beyond *stare decisis* and short of *res judicata." Tu v. State,* 336 Md. 406, 416, 648 A.2d 993, 997 (1994), citing 1B J.W. Moore, J.D. Lucas & T.S. Currier, Moore's Federal Practice ¶ 0.401, at I–2 to I–3 (2d ed.1993) (footnotes omitted).

This view is consistent with the universal application of the doctrine in both federal and state courts. *See United States v. United States Smelting Refining & Mining Co.,* 339 U.S. 186, 198, 70 S.Ct. 537, 544, 94 L.Ed. 750, 761 (1950); *Barrett v. Baylor,* 457 F.2d 119, 123 (7th Cir.Ill.1972); *Pincus v. Pabst Brewing Co.,* 752 F.Supp. 871, 872–873 (E.D.Wis.1990); *Kowis v. Howard,* 3 Cal.4th 888, 12 Cal.Rptr.2d 728, 838 P.2d 250,

251 (1992); *In Re Estate of Baird,* 193 Cal. 225, 223 P. 974, 978 (1924); *Alumet v. Bear Lake Grazing Co.,* 119 Idaho 946, 812 P.2d 253, 257 (1991); *Stroh Brewery Co. v. Director of New Mexico Dep't of Alcoholic Beverage Control,* 112 N.M. 468, 816 P.2d 1090, 1096 (1991); *Gohman v. St. Bernard,* 111 Ohio St. 726, 146 N.E. 291, 292 (1924).

Thus, the cases on which the appellant relies are instructive. In *Buffin v. Hernandez,* the plaintiff, having been found liable on the defendant's counterclaim, filed at the same time a Motion to Modify Judgment and an appeal. Before the trial court ruled on the motion, the Court of Special Appeals issued its opinion affirming the trial court's judgment. The defendant then sought a ruling on his motion. Citing *Korotki v. Springer,* 218 Md. at 194, 145 A.2d at 768, the intermediate appellate court reversed the trial court's acceptance of jurisdiction and modification of its prior judgment, holding that a trial court no longer has jurisdiction to modify a judgment once it has been affirmed on appeal. *See* 44 Md.App. at 253, 408 A.2d at 396. *Korotki* is to a similar effect. There, the appellees brought a suit in equity to rescind the sale of a grocery store which they purchased from the appellants. The trial court passed a decree dismissing the bill and the appellees appealed. This Court reversed, see *Springer v. Korotki,* 215 Md. 310, 137 A.2d 655 (1958), remanding the case "for further proceedings not inconsistent with this opinion." 218 Md. at 192–93, 145 A.2d at 768. On remand, the appellants sought to offer evidence, which they alleged to have been newly discovered and would disprove the facts found by the Court of Appeals on the previous appeal. When the court declined to hear the evidence the appellants appealed. They contended, on appeal, that the evidence proffered showed that the appellees had perpetrated a fraud, or attempted fraud, upon the court, in violation of the maxim of clean hands, and that the court was bound to hear it. This Court did not agree. We opined:

" 'The cases on the subject are far from clear, but we think they support the proposition that after a judgment or decree is affirmed on appeal, the lower court may not

entertain a motion to reopen, and the same rule applies to a reversal and remand for further proceedings, as to matters decided by the appellate court.' *See Pinkney v. Jay & Mason,* 12 Gill & J. 69; *McClellan v. Crook,* 7 Gill 333; *Young v. Frost,* 1 Md. 377; *Maryland Steel Co. v. Marney,* 91 Md. 360 [46 A. 1077]; *Winter's Executors v. Gittings,* 102 Md. 464 [62 A. 1033]; *United Rys. Co. v. Corbin,* 109 Md. 52 [71 A. 131]; *Rent–A–Car Co. v. Fire Ins. Co.,* 166 Md. 447 [171 A. 350]."

218 Md. at 194, 145 A.2d at 768.

There is, to be sure, a difference between this case and *Korotki.* While in *Korotki,* the parties sought to reopen the case, after appeal, to introduce new evidence that would have, if accepted and credited, required a different result from that reached by the appellate court, and, here, the appellee moved to have the judgment of the court in effect prior to the appellate decision reinstated, the cases are consistent in that in both cases a final judgment had been entered on appellate review, which judgment would have been overturned had the actions sought to be taken been allowed.

 It is well settled that the law of the case doctrine does not apply when "one of three 'exceptional circumstances' exists: the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision on the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice." *Smith Int'l, Inc. v. Hughes Tool Co.,* 759 F.2d 1572, 1576 (Fed.Cir.1985); *see also Gould, Inc. v. United States,* 67 F.3d 925, 930 (Fed.Cir.1995); *United States v. Becerra,* 155 F.3d 740, 752–53 (5th Cir.1998); *Goodwin v. Johnson,* 224 F.3d 450, 457–58 (5th Cir.2000) (quoting *Free v. Abbott Labs., Inc.,* 164 F.3d 270, 272 (5th Cir.1999)); *United States v. Aramony,* 166 F.3d 655, 661 (4th Cir.1999); *United States v. Campbell,* 168 F.3d 263, 269 (6th Cir.1999); *People v. Ramos,* 37 Cal.3d 136, 207 Cal.Rptr. 800, 689 P.2d 430, 434 (1984); *State v. Huffman,* 643 N.E.2d 899, 901 (Ind.1994); *United Fire & Cas. Co. v. Iowa Dist. Court,* 612 N.W.2d 101, 103–04 (Iowa 2000); *Wil-*

son v. Commonwealth, 975 S.W.2d 901, 904 (Ky.1998); Simpson v. State Farm Fire and Casualty Company, 564 So.2d 1374, 1376–81 (Miss.1990); Paul R. Peterson Constr. v. Arizona State Carpenters Health & Welfare Trust Fund, 179 Ariz. 474, 880 P.2d 694, 699 (App.1994); Gabor v. Gabor, 599 So.2d 737, 738–739 (Fla.Dist.Ct.App.1992). There has been no subsequent trial, nor any contention that there is substantially different evidence relative to the issue under review and the appellee does not argue that the decision of the Court of Special Appeals was clearly erroneous or would work a manifest injustice. Rather, the appellee maintains that the law governing the case has changed and, therefore, a different result is mandated, that "controlling authority has since made a contrary decision on the law applicable to such issues." [5]

At the outset, it is appropriate to consider what the Circuit Court and the Court of Special Appeals decided and were asked to decide. Neither court was asked to vacate the consent decree and, in fact, neither purported to do so. The Circuit Court did not even find the consent decree applicable under the facts before it, concluding, instead, that the appellant's conduct did not fall in the consent decree, that is, her cocaine possession was not a threat to the health and safety of other public housing tenants or appellee's employees. The Court of Special Appeals commented on the nature of a consent decree, i.e.,

"A consent decree has the same effect as a judgment entered after full adversarial litigation. United States v.

---

**5.** Regardless of the merit of this reasoning, it is important to note that the law of the case doctrine is inapplicable to the Court of Appeals. See DeShields v. Broadwater, 338 Md. 422, 447, 659 A.2d 300, 312 (1995) (recognizing that the law of case doctrine does not bind an appellate court on direct review); Houghton v. County Comm'rs of Kent Co., 305 Md. 407, 414, 504 A.2d 1145, 1149, on reconsideration, 307 Md. 216, 513 A.2d 291 (1986)( acknowledging that law of case doctrine does not apply to the Court of Appeals); In re Levon A., 361 Md. 626, 636, 762 A.2d 572, 577 (2000) (noting that the Court of Appeals is given statutory authority to review judgments of the Court of Special Appeals); Loveday v. State, 296 Md. 226, 234, 462 A.2d 58, 61(1983)( stating that the doctrine does not apply to the Court of Appeals when asked "to review judgments of subordinate courts").

*Swift & Co.,* 286 U.S. 106, 114, 52 S.Ct. 460, 76 L.Ed. 999 (1932). In addition, since consent decrees and orders have many of the attributes of ordinary contracts, they should be construed basically as contracts. . . ." *United States v. ITT Continental Baking Co.,* 420 U.S. 223, 236, 95 S.Ct. 926, 934, 43 L.Ed.2d 148 (1975); see also Michael D. Friedman, Comment, Consent Decrees: Practical Problems and Legal Dilemmas, 1987 U.Chi.Legal F. 431, 448 (concluding that consent decrees have characteristics of both contracts and judicial acts)."

While, therefore, the intermediate appellate court determined that the consent decree applied, it simply recognized the existence of the consent decree and that it had not been modified in any way. The court simply did not address whether the consent decree should be vacated or the standard governing that decision.

Nevertheless, the appellee's argument in connection with the motion to reinstate judgment, and the Circuit Court's opinion ruling on the motion, relied on the intermediate appellate court's statement of its holding:

"We find, therefore, that the *Lacy* consent decree applies, and that the federal court has continuing jurisdiction to enforce it; accordingly, HABC is bound by its provisions unless and until the federal court modifies the consent decree,"

the fact that the court relied on *Swift & Co.,* 286 U.S. at 115, 52 S.Ct. at 462–463, 76 L.Ed. at 1000, and the decision by the Federal District Court to vacate the consent decree. In effect, the appellee sees the intervening federal decision as controlling authority, mandating the reinstatement of the earlier Circuit Court judgment.

The appellee is partially correct. The intervening federal decision is controlling authority as to the appellee and is binding on it. Subsequent to that decision, the appellee is relieved of the obligation of providing its tenants similarly situated to the appellant with a grievance hearing. On the other hand, that the federal court subsequently vacated the

consent decree is not controlling authority contrary to the decision of the intermediate appellate court; its decision did not affect, and indeed could not have, the Court of Special Appeal's decision, it having already established the law of the case that is binding on the parties. Consequently, and as a matter of fact, the intervening federal decision does not, and could not, mandate the reinstatement of the Circuit Court judgment.

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE APPELLEE.