28 A.3d 737

**Barry J. NACE**

v.

**Tamara Hamilton MILLER.**

**No. 0692, Sept. Term, 2010.**

Court of Special Appeals of Maryland.

Sept. 7, 2011.

56

58

Deborah M. Whelhan (Mancy M. Wolfe, Jordan, Coyne & Savits LLP, on the brief), Washington, DC, for appellant.

Panel: GRAEFF, HOTTEN and RAYMOND G. THIEME, JR. (Retired, Specially Assigned), JJ.

HOTTEN, J.

Appellee, Tamara Hamilton Miller, filed a complaint for professional malpractice against Barry J. Nace, Esq., appellant, in the Circuit Court for Prince George's County. Appellant requested that the case be transferred to the Circuit Court for Montgomery County on the ground of *forum non conveniens*. The court granted the request and transferred the case. After a third party complaint was filed against Tawanda Hamilton ("Hamilton"), appellee's mother, she and appellee, separately, requested that the case be transferred

back to Prince George's County. The court granted the request and appellant noted an appeal. Appellant, in his own words, presents the following questions:

I. Did the Circuit Court for Montgomery County abuse its discretion acting as an appellate court and in overruling the Circuit Court for Prince George's County's final judgment as to venue?

II. Did the Circuit Court for Montgomery County err in transferring this action to the Circuit Court for Prince George's County, a county where venue is improper?

III. Did the Circuit Court for Montgomery County abuse it[ ]s discretion when transferring this action to the Circuit Court for Prince George's County on the basis of *forum non conveniens?*

For the reasons that follow, we shall affirm the judgment of the Circuit Court for Montgomery County.

## BACKGROUND

On January 27, 1997, appellant settled a medical malpractice suit on behalf of appellee for the amount of $530,228.40. Not long after, appellant petitioned the Circuit Court for Montgomery County, the presiding court, to be the guardian of appellee's settlement proceeds. Appellant, without knowing that the petition was denied, acted as the guardian of the proceeds. However, on August 20, 2007, the Circuit Court for Montgomery County granted the petition *nunc pro tunc.*

At some point during the guardianship, Hamilton informed appellant that she had failed to pay property taxes for 2002. Appellant petitioned the Circuit Court for Montgomery County for $14,284.37 to satisfy the outstanding taxes. The petition also indicated that the property would be transferred to appellee, requested funds to address current taxes, and funds to secure property insurance. The Circuit Court for Montgomery County released the funds, but neither appellant nor Hamilton purchased property insurance. On two other occasions, appellant petitioned the Circuit Court for Montgomery

County for funds to secure property insurance. However, property insurance was never purchased.

On March 14, 2004, a fire ravaged appellee's residence, and she and her mother lost everything. Appellant subsequently filed an "Emergency Motion for Release of Funds." The Circuit Court for Montgomery County granted the request and released $5,000 for shelter and clothing. Approximately two years after the fire, appellant petitioned the court to secure funds to repair appellee's residence.[1] The court granted the request and released approximately $80,000 to repair the residence and replace clothing and goods that were destroyed in the fire.

On April 1, 2008, appellee filed a complaint in the Circuit Court for Prince George's County, alleging legal malpractice for failure to purchase an insurance policy and submit annual fiduciary reports while acting as a guardian. On November 10, 2008, appellant filed a motion to transfer venue. Appellant argued that Prince George's County was not the proper venue because he did not reside in the county, nor did he habitually engage in the practice of law in the county. Instead, appellant asserted that Montgomery County was the proper forum because he resided and maintained an office there. Appellee countered that Prince George's County was the proper venue because she resided there and the cause of action arose from a guardianship action that should have been pursued there. Appellee also asserted that the case should not be transferred to Montgomery County because that would reward appellant for his negligent misfiling.

On January 26, 2009, the Circuit Court for Prince George's County granted the motion and transferred the case to the Circuit Court for Montgomery County. Appellee filed a motion for reconsideration, which was denied. On August 21, 2009, appellant filed a third-party complaint against Hamilton, seeking contribution and/or indemnification. Hamilton filed a

---

1. Appellee and her mother were homeless for approximately two and a half years.

motion to dismiss, or in the alternative, a motion to transfer. In her motion, Hamilton argued that appellant failed to state a claim upon which relief could be granted. Hamilton also posited that Prince George's County was the proper venue because she neither worked nor resided in Montgomery County, the cause of action arose there, and the majority of witnesses resided there.

In opposition, appellant highlighted his intention to voluntarily dismiss the third-party complaint against Hamilton. Appellant, nevertheless, argued that there were sufficient facts upon which relief could be granted because Hamilton was responsible for obtaining insurance on the residence she lived in, had a duty to care for her daughter, and that the property was not titled to appellee at the time of the fire. Appellant further argued that the motion to transfer should be denied because the Circuit Court for Prince George's County had previously decided the issue. Appellant then asserted that Montgomery County, regardless, presented a minor inconvenience, and that the transfer request would not serve the interests of justice.

Appellee, separately, responded and argued that Prince George's County was the proper venue because the guardianship action should have been brought there. Appellee further argued that the Circuit Court for Montgomery County would be inconvenient because she could not drive; she depended on public transportation or others to get to Rockville; Rockville was forty miles from her house in comparison to thirteen miles from Upper Marlboro; she cared for a one-year old child; and, in comparison, travel was easier for appellant.

On February 17, 2010, the Circuit Court for Montgomery County held a motions hearing. At the hearing, appellant requested that the court dismiss the third-party complaint. Hamilton objected to the voluntary dismissal because she wanted to pursue sanctions. The court granted the dismissal and appellee subsequently argued that the case should be transferred to Prince George's County because the cause of action occurred there. Appellee further posited that it was

more convenient to have the case heard in Prince George's County because that is where she resided and her disability prevented her from driving. Appellant countered that the issue was previously decided by the Circuit Court for Prince George's County. The court informed the parties that it did not anticipate addressing the venue issue and welcomed additional pleadings. The Circuit Court for Montgomery County reviewed the pleadings and transferred the case back to the Circuit Court for Prince George's County. Appellant filed a motion for reconsideration and it was denied. Thereafter, appellant noted a timely appeal.

## DISCUSSION

### I.

Before we determine the propriety of granting the motion to transfer, we must address appellant's assertion that appellee, in practice, assented to the decision to transfer. Specifically, appellant posits that appellee acquiesced to the Circuit Court for Prince George's County's decision because she did not note an appeal and engaged in discovery after the case was transferred to the Circuit Court for Montgomery County.

A similar argument was proffered in *Sigurdsson v. Nodeen*, 180 Md.App. 326, 950 A.2d 848 (2008). In that case, the defendants argued that plaintiff waived her right to appeal the decision to transfer the "Complaint for Modification of Child Custody Order" because she participated in litigation after it was transferred. *See id.* at 339, 950 A.2d 848. In addressing the issue, we noted that waiver is a voluntary relinquishment of a right. *Id.* We then held that plaintiff did not waive her right to appeal because: (1) she did not voluntarily participate in the case as transferred, (2) she participated in discovery, and appeared before the court for scheduling and pre-trial conferences, because she could have faced sanctions or dismissal, (3) she requested a postponement of the pre-trial conference because of the pending appeal, (4) if she did not propound discovery she could have been precluded from en-

gaging in any discovery regardless of the forum, and (5) any discovery conducted in one court would be transferrable to the other court. *Id.* at 340, 950 A.2d 848.

██ In the present case, appellee did not immediately note an appeal, nor did she seek a postponement of pre-trial scheduling conferences. That, however, does not mean she acquiesced to the decision concerning venue. Appellee could have immediately appealed the decision because it was a final judgment;[2] however, she was not required to because "relief can be granted by an appellate court when a case has been transferred, erroneously, to another circuit court on venue ground, even after the case in the transfer court has been tried." *Id.* at 339, 950 A.2d 848. Moreover, as noted in *Sigurdsson,* appellee could have been subject to sanctions, or the case could have been dismissed, if she did not participate in discovery. Thus, we conclude that appellee did not acquiesce to the transfer decision of the Circuit Court for Prince George's County.

## II.

██ A "court may transfer any action to any other circuit court where the action might have been brought if the transfer is for the convenience of the parties and witnesses and serves the interests of justice." Md. Rule 2–327(c). Appellant, relying on *Allfirst Bank v. Progress Rail Serv's Corp.,* 178 F.Supp.2d 513 (D.Md.2001) and *In re Cragar Indus., Inc.* 706 F.2d 503 (5th Cir.1983), argues that the Circuit Court for Montgomery County improperly assumed the role of an appellate court when it overruled the transfer decision of the Circuit Court for Prince George's County.[3]

---

**2.** *See Brewster v. Woodhaven Building & Development, Inc.,* 360 Md. 602, 615–16, 759 A.2d 738 (2000) ("[A]n order transferring a case from one circuit court to another, for proper venue or for a more convenient forum, and thereby terminating the litigation in the transferring court, is a final judgment and thus immediately appealable.") (italics omitted).

**3.** Md. Rule 2–327(c) was derived from 28 U.S.C. § 1404(a), the federal rule that provides a case can be transferred for the convenience of the

In *Allfirst Bank*, 178 F.Supp.2d at 517, Progress Rail Car ("Progress Rail") filed a complaint against Allfirst Bank ("Allfirst") in state court. Allfirst removed the case to the United States District Court, Northern District of Georgia, and filed a motion to dismiss and a motion to transfer. *Id.* In response, Progress Rail filed a motion to remand. *Id.* The court denied the motion to dismiss and the motion to remand, but transferred the case to the United States District Court, District of Maryland. *Id.* Progress Rail subsequently filed a motion to re-transfer. *Id.* In reviewing the issue, the court noted that Progress Rail was requesting that it "act as an appellate court and reverse the ruling made by Judge Thrash." *Id.* The court, however, was unwilling to "play 'jurisdictional ping-pong' and retransfer" the case. *Id.* (citing *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir.1991)). The court noted that a ruling from another court constituted the rule of the case, which provides that a "decision should continue to govern the same issues in subsequent stages in the same case[,]" and that "the transferor court ... should not retransfer 'except under the most impelling and unusual circumstances' or if the transfer order is 'manifestly erroneous.'" *Allfirst Bank*, 178 F.Supp.2d at 517 (quoting *In Cragar*, 706 F.2d at 505). Thereafter, the court held that there was no showing that Judge Thrash's decision was clearly erroneous as a matter of law, there were no injustices that would manifest if the case was not re-transferred, and there was no interest of justice that required the court to "second-guess" a discretionary decision of a sister court. *Id.* at 517–18.

In *In re Cragar*, 706 F.2d at 504, Jerrell Robinson ("Robinson"), a resident of Louisiana, was injured in Mississippi while driving a vehicle manufactured by General Motors Corporation ("General Motors"), equipped with tires manufactured by

parties and witnesses, if in the interests of justice, and as such, federal law is persuasive. *Odenton Dev. Co. v. Lamy*, 320 Md. 33, 40, 575 A.2d 1235 (1990); *Lennox v. Mull*, 89 Md.App. 555, 563, 598 A.2d 847 (1991); *accord Smith v. State Farm Mut. Automobile Ins. Co.*, 169 Md.App. 286, 294, 900 A.2d 301 (2006); *Stidham v. Morris*, 161 Md.App. 562, 568, 870 A.2d 1285 (2005).

Cragar Industries ("Cragar"). Robinson filed a complaint against General Motors in the United States District Court, Northern District of Mississippi. *Id.* Not long after, Cragar was joined as a co-defendant. *Id.* Cragar submitted a motion to dismiss, which was granted, arguing that Mississippi's long-arm statute was not available to Robinson. *Id.* In response, Robinson filed a motion to transfer to the United States District Court, Western District of Louisiana, and the case was subsequently transferred. *Id.*

After the case was transferred, Cragar filed a motion for summary judgment, which was granted, arguing Robinson's claims against Cragar were barred by Louisiana's statute of limitations. *Id.* Not long after, General Motors filed a motion for summary judgment and asserted the same argument. *Id.* In response, Robinson requested that the case be transferred to the Northern District of Mississippi, because there were six witnesses that would testify if the case was transferred, and the Western District of Louisiana's docket was "crowded." *Id.* at 504–05. The court granted Robinson's request and transferred the case to the Northern District of Mississippi. *Id.* at 505.

General Motors noted an appeal. *See id.* On appeal, General Motors argued that the decision to transfer was an abuse of discretion because it acted contrary to the law of the case doctrine, and there was an insufficient basis for its decision. *Id.*[4] In reviewing the issue, the court articulated:

> Certainly, the decision of a transferor court should not be reviewed again by the transferee court. *Starnes v. McGuire,* 168 U.S.App. D.C. 4, 512 F.2d 918, 924 (D.C.Cir. 1974) (en banc). Such an independent review would implicate those concerns which underlie the rule of repose and decisional order we term the law of the case. We have said:

---

4. Cragar also noted an appeal because it was concerned that the Northern District of Mississippi would reconsider its motion for summary judgement. The Court of Appeals for the Fifth Circuit, however, discounted Cragar's concerns because it did not believe the Northern District of Mississippi would readdress the motion for summary judgment.

"If the motion to transfer is granted and the case is transferred to another district, the transferee-district should accept the ruling on the transfer as the law of the case and should not re-transfer 'except under the most impelling and unusual circumstances' or if the transfer order is 'manifestly erroneous.' " *United States v. Koenig,* 290 F.2d 166, 173 n. 11 (5th Cir.1961), *aff'd,* 396 U.S. 121, 90 S.Ct. 396, 24 L.Ed.2d 305 (1969). Failure to abide the original transfer order contains the additional potential mischief of tossing cases back and forth to the detriment of an adjudication of the underlying merits of the case and respect due sister courts.

It does not follow, however, that a transferee court is powerless to act where the original purposes of the transfer have been frustrated by an unforeseen later event. See 15 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3846 (1976). When such unanticipatable post-transfer events frustrate the original purpose for transfer, a return of the case to the original transferor court does not foul the rule of the case nor place the transferee court in a position of reviewing the decision of its sister court. It, instead, represents a considered decision that the case *then* is better tried in the original forum for reasons which became known after the original transfer order. In sum, we decline to adopt a per se rule forbidding a return of a transfer by the transferee court of a transferred case. *Id.* The court then held that it was unwilling to review the motion to transfer because it was unable to discern any event that was reasonably unforeseen, there were no new facts discovered, nor were there any new witnesses that were located. *Id.*

■ Although federal case law is persuasive with regard to Md. Rule 2–327(c), we decline to accept the federal court's reluctance to review a sister court's transfer order. The law of the case doctrine, which was the underlying rationale in *Allfirst Bank* and *In re Cragar,* and the reason federal courts generally do not re-review a motion to transfer, has been applied differently in Maryland. In *Kearney v. Berger,* 416

Md. 628, 641 (2010) (quoting *Reier v. State Dep't of Assessments & Taxation,* 397 Md. 2, 21, 915 A.2d 970 (2007) (quoting *Fid.-Baltimore Nat'l Bank & Trust Co. v. John Hancock Mut. Life Ins. Co.,* 217 Md. 367, 372, 142 A.2d 796 (1958))), the Court of Appeals outlined the law of the case doctrine, and articulated:

> Once [an appellate court] has ruled upon a question properly presented on an appeal, or, if the ruling be contrary to a question that could have been raised and argued in that appeal on the then state of the record, as aforesaid, such a ruling becomes the "law of the case" and is binding on the litigants and [courts] alike, unless changed or modified after reargument, and neither the questions decided [nor] the ones that could have been raised and decided are available to be raised in a subsequent appeal.

*See also Chesley v. Goldstein & Baron,* 145 Md.App. 605, 630, 806 A.2d 296 (2002) (quoting *Turner v. Hous. Auth. of Baltimore City,* 364 Md. 24, 32, 770 A.2d 671 (2001)) ("[A] trial court is bound by the decision of an appellate court in the case before it ... 'unless [the ruling is] changed or modified after reargument, and neither the questions decided nor the ones that could have been raised and decided are available to be raised in a subsequent appeal.' ").

In Maryland, the law of the case doctrine is rooted in appellate framework, and its purpose is to prevent piecemeal litigation. *Reier,* 397 Md. at 21, 915 A.2d 970. In the absence of the doctrine, " 'any party to a suit could institute as many successive appeals as the fiction of his imagination could produce new reasons to assign as to why his side of the case should prevail, and the litigation would never terminate.' " *Id.* (quoting *Fid.-Baltimore. Bank,* 217 Md. at 372, 142 A.2d 796). In comparison, the law of the case doctrine in the federal system "prevents the relitigation of settled issues in a case, thus protecting the settled expectations of parties, ensuring uniformity of decisions, and promoting judicial efficiency." *Little Earth of the United Tribes, Inc. v. U.S. Dept. of Hous. & Urban Dev.,* 807 F.2d 1433, 1441 (1986).

As evident above, the law of the case doctrine in Maryland and in the federal system strive to prevent unnecessary appeals. However, as exhibited in *Allfirst Bank* and *In re Cragar*, in the federal system, the doctrine can be applied in the absence of an appellate decision. Notwithstanding similar functions of the doctrines, we decline to hold that the law of the case doctrine precludes sister circuit court's from readdressing a motion in the absence of an appellate decision, a hallmark of our law of the case doctrine. Thus, in the case *sub judice,* because a decision by a sister court cannot be considered a decision from an appellate court, we conclude that the Circuit Court for Montgomery County was not precluded from reviewing the motion to re-transfer pursuant to the law of the case doctrine.

Moreover, we note that *Scott v. State,* 379 Md. 170, 840 A.2d 715 (2004), is instructive because the Court of Appeals determined that the law of the case doctrine was not applicable to subsequent decisions made by coordinate judges. There, the defendant filed a motion to correct an illegal sentence, asserting the term "balance of Natural Life" may cause ambiguity that could bar the possibility of parole, and that the use of the term "consecutive" was "deficient" because it did not provide a start date to his sentence. *Id.* at 175–76, 840 A.2d 715. The court concluded that correctional authorities would not imprison the defendant for life without parole because they were confused, and that it was clear that his sentences were supposed to run consecutive to each other. *Id.* 176–77, 840 A.2d 715.

The defendant then filed a petition for post conviction relief. *Id.* at 178, 840 A.2d 715. Approximately a year later, because his first petition was dismissed without prejudice, the defendant filed a second petition. *Id.* In the second petition, the defendant argued that the language used to sentence him was deficient because the court stated "[consecutive to] sentence now being served," and that Judge Byrnes erred by revising his sentence. *Id.* Judge Smith concluded that the sentencing language was not confusing because six original commitment records, and four sentence modifications, referred to case

numbers and counts that provided clarity. *Id.* at 178–79, 840 A.2d 715. Judge Smith also concluded that Judge Byrnes did not err in revising the commitment records because the changes did not alter the substance of the sentences. *Id.* at 179, 840 A.2d 715.

The defendant then filed another motion to correct an illegal sentence. *Id.* at 179, 840 A.2d 715. Appellant proffered the same arguments above, and further posited that then Governor Glendening's new parole guidelines rendered his sentence illegal. *Id.* at 179–80, 840 A.2d 715. In denying the motion, Judge Matricciani, who was then a member of the Circuit Court for Baltimore City, noted that Judge Smith already concluded there was no ambiguity or illegality in the defendant's sentences. *Id.* at 180, 840 A.2d 715. Judge Matricciani further noted that the defendant's argument concerning error in the commitment records was without merit and that the defendant's sentences were not rendered illegal by the new parole guidelines. *Id.* The defendant appealed and argued, among other things, that Judge Matricciani abused his discretion when he did not make his own determination about the legality of the sentence. *Id.* We disagreed and concluded that the motions proffering the same facts and arguments did not need to be considered because of the law of the case doctrine. *Id.* Moreover, we concluded that Judge Matricciani did not abuse his discretion when he adopted Judge Smith's rationale for denying the defendant's request. *Id.* at 181, 840 A.2d 715.

On appeal, the Court of Appeals noted that the law of the case doctrine was primarily one of appellate procedure, and that there were no appellate rulings concerning the legality of the defendant's sentence. *Id.* at 183–84, 840 A.2d 715. The Court then held that the law of the case doctrine was inapplicable because "one circuit court judge followed the reasoning of another circuit court judge in the same case." *Id.* at 184, 840 A.2d 715. Moreover, the Court noted that " 'as a general principle, one judge of a trial court ruling on a matter is not bound by the prior ruling in the same case by another judge of the court.' " *Id.* (quoting *Gertz v. Anne Arundel County,* 339 Md. 261, 273, 661 A.2d 1157 (1995)) (quoting *State v. Frazier,*

298 Md. 422, 449, 470 A.2d 1269 (1984)). The Court of Appeals then concluded that Judge Matricciani was permitted to adopt Judge Smith's reasoning as long as he did not abdicate his own judgment, *Scott,* 379 Md. at 184, 840 A.2d 715 (citation omitted), and that "as Judge Smith's colleague of coordinate jurisdiction ... [Judge Matricciani] was free to adopt Judge Smith's reasoning, but he was not bound by the doctrine of the law of the case to do so." *Id.* at 185, 840 A.2d 715.

*Scott* is instructive to the case *sub judice* because it reiterated that the law of the case doctrine is not applicable if there are no appellate rulings or decisions. Moreover, although *Scott* does not concern a sister court readdressing a motion to transfer, it is informative because it demonstrates that the law of the case doctrine does not question the autonomy judges are provided in reviewing a motion. The only caveat *Scott* provided was that a judge cannot abdicate his decision for that of another judge's. In the case at bar, there was no appellate decision or ruling, Judge Johnson presided over a hearing, reviewed the issues as if Judge Chapdelaine had never reviewed them, and then ordered a transfer back to the Circuit Court for Prince George's County. Thus, we believe Judge Johnson was not precluded from considering the motion to transfer.

### III.

Appellant argues that the Circuit Court for Montgomery County erred in granting appellee's motion to transfer because venue does not lie in Prince George's County. Appellee responds that venue lies in Prince George's County because appellant was engaged in habitual vocation in Prince George's County.

Md.Code (2002 Repl.Vol.), § 6–201(a) of the Courts & Judicial Proceedings Article ("C.J.") states that, subject to C.J. § 6–202[5] and C.J. § 6–203,[6] "a civil action shall be

---

**5.** C.J. § 6–202 outlines the appropriate venue for specifically designated situations. C.J. 6–202(8), which provides that venue in a tort action

brought in a county where the defendant resides,[7] carries on a regular business, is employed, or habitually engages in a vocation." In *Dodge Park Enter's, Inc. v. Welsh,* 237 Md. 570, 572, 207 A.2d 503 (1965) (quoting *Bank of Baltimore v. Steele,* 143 Md. 484, 122 A. 633 (1923)), the Court of Appeals explained " 'that the regular business or habitual avocation or employment' contemplated by [C.J. § 6–201(a) ] included . . . 'the continuous pursuit of some calling or profession, such as is ordinarily engaged in as a means of livelihood or for the purpose of gain or profit[.]' " At the time the malpractice claim was filed,[8] appellant was not listed as counsel on any active matter in Prince George's County. Rather, appellant primarily represented clients in the District of Columbia and Montgomery County. Thus, because appellant did not continuously pursue his profession in Prince George's County at the time the cause of action was filed, venue could not be conferred there as a result of his profession. *Cf. Pacific Mortgage & Inv. Group, Ltd. v. Horn,* 100 Md.App. 311, 324, 641 A.2d 913 (1994) (a resident that regularly provided credit to Baltimore City residents, placed mortgage liens on property in Baltimore City, and bought and sold mortgages in Baltimore City, carried on regular business in Baltimore City).

---

based on negligence is appropriate where the cause of action arose, is the only situation provided for in the section that is relevant to the present case.

6. C.J. § 6–303, in relevant part, outlines specific situations in which C.J. § 6–201 does not apply. None of those exceptions apply to this case.

7. Appellee alludes that venue is proper in Prince George's County because the title to her mother's property was in appellant's name. However, merely having the property titled in appellant's name does not mean he resided in Prince George's County. To the contrary, as appellee acknowledges, appellant resided in Montgomery County.

8. The Court of Appeals in *Burnside v. Wong,* 412 Md. 180, 208, 986 A.2d 427 (2010), explained that when determining whether a defendant engages in habitual vocation, "a civil action . . . may be filed only in a county where the defendant, *at the time of filing,* carries on a regular business, or habitually engages in a vocation." (emphasis added).

 Appellee next posits that venue lies in Prince George's County because the malpractice suit is based on a guardianship action that should have been brought in Prince George's County. C.J. § 6–202(5) provides that an action relating to guardianship can be brought where the mother of a child resides, or where the child resides. Although the underlying malpractice case is predicated on the guardianship case, **this is not** an actual guardianship case.[9] Thus, venue could not be conferred on Prince George's County merely because the guardianship action should have been brought there.

Appellee next asserts that venue lies in Prince George's County because the cause of action occurred there. C.J. § 6–202(8) provides that venue may lie where the cause of action arose in a tort action based on negligence. Appellant objects and posits that the alleged malpractice arose in Montgomery County because: (1) the Circuit Court for Montgomery County administered the guardianship, (2) appellant performed guardianship services in Montgomery County, and (3) appellant allegedly mis-administered appellee's guardianship in Montgomery County. Appellant relies on *Burnside v. Wong, supra,* 412 Md. at 180, 986 A.2d 427 for support.

In *Burnside,* Earlene Burnside ("Burnside") filed a complaint in the Circuit Court for Baltimore City against Dr. Randall Wong ("Wong"), alleging medical malpractice, lack of informed consent, and loss of consortium. *Id.* at 186, 986 A.2d 427. Wong filed a "Motion to Dismiss for Improper Venue," arguing venue was improper in Baltimore City because he did not reside or carry on business there. *Id.* at 188, 986 A.2d 427. Wong, moreover, argued that venue was improper in Baltimore City because the alleged negligence occurred in Baltimore County. *Id.* at 189, 986 A.2d 427. The court granted the motion because Wong's contacts to Baltimore City at the time of the alleged cause of action were insufficient to confer venue. *Id.* at 190, 986 A.2d 427. Burnside filed a

---

**9.** Appellant's alleged failure to submit the guardianship action in the Circuit Court for Prince George's County shall not be addressed because it is an issue in the pending malpractice case.

motion for reconsideration, arguing venue lied in Baltimore City because a cause of action, for venue purposes, arises when each element of the offense occurs, and the injury occurred in Baltimore City. *Id.* at 192, 986 A.2d 427. The circuit court denied the motion. *Id.* at 193, 986 A.2d 427.

Burnside noted an appeal and we concluded, among other things, that venue was improper in Baltimore City because Wong's medical privileges at Mercy Medical Center, and his teaching privileges at the University of Maryland School of Medicine, had not been used since 2003 and 1999 respectively. *Id.* at 194, 986 A.2d 427. We then held that venue was proper in Baltimore County because that is where Wong misdiagnosed Burnside. *Id.* On appeal, the Court of Appeals, relying on *Green v. North Arundel Hospital Ass'n,* 366 Md. 597, 785 A.2d 361 (2001), noted that a cause of action under C.J. § 6–202(8) may arise "at the situs of the alleged misdiagnosis or negligent treatment in a disease progression, and not at the place of the ultimate harm." *Burnside,* 412 Md. at 206, 986 A.2d 427. The Court of Appeals then concluded that despite Burnside's ultimate injury occurring in Baltimore City, venue lay in Baltimore County because Wong allegedly misdiagnosed, mistreated, and failed to obtain informed consent in Baltimore County. *Id.* at 206–07, 986 A.2d 427.

In light of the Court of Appeals' reliance on *Green,* we believe it is essential to review the case. There, Darwin Green ("Darwin"), who had a shunt placed in the right cerebral ventricle of his brain nine days after birth, was taken to the North Arundel Hospital after experiencing a headache, vomiting, nausea, and drowsiness. *Green,* 366 Md. at 602–03, 785 A.2d 361. Dr. Fields, the attending physician, ordered a CT scan and Dr. Axelbaum, a radiologist, reviewed it. *Id.* at 603, 785 A.2d 361. Dr. Axelbaum noticed shunts and a number of other abnormalities in Darwin's brain, but concluded that the scan reflected "old" changes. *Id.* Dr. Fields consulted with Dr. Mody, a neurologist, and he recommended that Darwin could be released once the headache subsided. *Id.* The next day, Darwin went to his pediatrician, Dr. Lee, because the headache persisted. *Id.* Dr. Lee arranged an

immediate consultation at the University of Maryland Hospital in Baltimore City. *Id.* Darwin immediately underwent a CT scan, which indicated he had to undergo surgery because of a possible shunt malfunction. *Id.* at 603–04, 785 A.2d 361. Darwin was admitted to the neurosurgery service at 11:00 p.m. and his condition deteriorated overnight. *Id.* at 604, 785 A.2d 361. Darwin was subsequently admitted to the intensive care unit, where he suffered a cardiac arrest that left him severely brain-damaged. *Id.*

Darwin's parents, on behalf of Darwin, filed a malpractice suit in the Circuit Court for Baltimore City against North Arundel Hospital and Dr. Fields. *Id.* at 605, 785 A.2d 361. North Arundel Hospital and Dr. Fields moved to dismiss for improper venue. *Id.* Darwin argued that, because the injury occurred in Baltimore City, pursuant to C.J. § 6–202(8), venue was proper there. *Id.* The court concluded that C.J. § 6–202(8) was inapplicable, and that "under the clear mandate of [C.J. §] 6–201(b), venue lay only in Anne Arundel County." *Id.* The Circuit Court for Baltimore City thereafter transferred the case to the Circuit Court for Anne Arundel County. *Id.*

Two weeks before trial, Darwin moved to stay the proceedings in order to add Drs. Mody and Axelbaum. *Id.* Instead of proceeding in the Circuit Court for Anne Arundel County, Darwin filed a new cause of action in the Circuit Court for Baltimore City against North Arundel Hospital and Drs. Fields, Mody, and Axelbaum. *Id.* at 605–06, 785 A.2d 361. Darwin then moved to transfer the stayed case in Anne Arundel County to Baltimore City. *Id.* at 606, 785 A.2d 361. The Circuit Court for Anne Arundel County denied the motion. *Id.* At or around the same time, the defendants in the Baltimore City case filed a motion to dismiss, which was granted. *Id.* Drs. Mody and Axelbaum were subsequently added as defendants in the Anne Arundel County case. *Id.*

Darwin appealed the venue ruling from the Circuit Court for Baltimore City. *Id.* We concluded that the lower court was incorrect in ruling C.J. § 6–202(8) was inapplicable, but we

noted that this error was harmless because the cause of action did not arise in Baltimore City, and venue did not lie there. *Id.* We further noted that an action based on negligence occurs where the injury first occurs, and Darwin's injury occurred in Anne Arundel County. *Id.* On appeal, the Court of Appeals noted that a cause of action for negligence arises when every element is supported, *id.* at 607, 785 A.2d 361 (citing *Owens–Illinois v. Armstrong,* 326 Md. 107, 121, 604 A.2d 47 (1992)), and when "a cause of action for negligence arises, the focus is often on when the last element of injury occurs." *Green,* 366 Md. at 607, 785 A.2d 361. The Court, however, recognized that a " 'patient could suffer an 'injury' as a result of a negligent misdiagnosis. . . .' " *Id.* at 610, 785 A.2d 361 (quoting *Rivera v. Edmonds,* 347 Md. 208, 215, 699 A.2d 1194 (1997)). In that regard, the Court of Appeals concluded that despite the cardiac arrest occurring in Baltimore City, venue lied in Anne Arundel County because his condition deteriorated after he was misdiagnosed at North Arundel Hospital. *Green,* 366 Md. at 611–12, 785 A.2d 361; *Id.* at 612, 785 A.2d 361 (venue is proper where a person first experienced injury in the form of deterioration, not the site of the ultimate injury).

The present case is distinguishable from *Burnside* and *Green* because we cannot determine injury based on deterioration. A fire occurred on a single day and immediately caused damage. There was no slow burning fire that progressively worsened like a disease that was not diagnosed. The fire did not quicken because of the absence of insurance, nor could it have been prevented because of insurance. Instead, we recognize that the fire was the injury and the failure to purchase insurance would be considered a breach of duty. Thus, because the fire destroyed the property in Prince George's County, venue was appropriate in Prince George's County pursuant to C.J. § 6–202(8).

## IV.

A court is given "wide discretion" in determining whether to grant a motion to transfer based on *forum non*

*conveniens. Odenton, supra,* 320 Md. at 40, 575 A.2d 1235 (citation omitted). Consequently, we review such decisions under the abuse of discretion standard. *Cobrand v. Adventist Healthcare, Inc.,* 149 Md.App. 431, 437, 816 A.2d 117 (2003). "An abuse of discretion is said to occur 'where no reasonable person would take the view adopted by the trial court, or when the court acts without reference to any guiding rules or principles.' " *Id.* (quoting *In re Adoption/Guardianship No. 3598,* 347 Md. 295, 312, 701 A.2d 110 (1997) (quoting *North v. North,* 102 Md.App. 1, 13, 648 A.2d 1025 (1994))) (Internal citations, alterations, and quotations omitted).

When determining whether to grant a motion to transfer for *forum non conveniens,* a court must weigh the convenience of the parties and the interests of justice. *See Leung v. Nunes,* 354 Md. 217, 224, 729 A.2d 956 (1999); *Urquhart v. Simmons,* 339 Md. 1, 17, 660 A.2d 412 (1995); *Odenton,* 320 Md. at 40, 575 A.2d 1235; *Payton–Henderson v. Evans,* 180 Md.App. 267, 288–89, 949 A.2d 654 (2008); *Stidham, supra,* 161 Md.App. at 567, 870 A.2d 1285. "[T]he 'convenience' factor requires a court to review the convenience of the parties and the witnesses." *Cobrand,* 149 Md.App. at 439 n. 5, 816 A.2d 117. The interests of justice aspect requires a court "weigh both the private and public interests; the public interests being composed of 'systemic integrity and fairness.' " *Id.* (quoting *Odenton,* 320 Md. at 40, 575 A.2d 1235).

In *Stidham,* 161 Md.App. at 568–69, 870 A.2d 1285, Chief Judge Krauser expounded on the issue, and articulated:

Private interests include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *see also Johnson v. G.D. Searle & Co.,* 314 Md. 521, 526, 552 A.2d 29

(1989). On the other hand, public interests include, among other things, considerations of court congestion, the burdens of jury duty, and local interest in the matter. *Johnson,* 314 Md. at 526 [552 A.2d 29] (quoting *Gilbert,* 330 U.S. at 508–509 [67 S.Ct. 839] ). "Jury duty," the Court of Appeals has stressed, "is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Id.* And, as for "local interest," that Court has observed, "there is a local interest in having localized controversies decided at home." *Id.*

The record demonstrates that there was sufficient support for the Circuit Court for Montgomery County to determine that transferring the case to the Circuit Court for Prince George's County served the interests of justice and was more convenient. First, appellee established that Upper Marlboro was more convenient because she was disabled and unable to drive and appellant could travel throughout the state and the District of Columbia. Second, appellant established that she would have to take public transportation, which would take a significant portion of time, whereas appellant could easily drive. Third, appellee established that appellant had two witnesses, he and his wife, who lived in Montgomery County, whereas appellee intended on calling teachers, principals, and firefighters that resided or worked in Prince George's County.[10] Finally, appellee established that Prince George's County should preside over the matter because the cause of action occurred there. Accordingly, we conclude that the Circuit Court for Montgomery County did not abuse its discretion in transferring the case to the Circuit Court for Prince George's County because of *forum non conveniens.*

**JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

10. Each party also argued that convenience favored Montgomery County or Prince George's County because of court personnel. Inasmuch as each party proffered the same argument, we believe these alleged inconveniences cancel each other out.